**Derrick Wayne WEATHERALL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 660-89.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 13, 1991.

John H. Hagler, Dallas, for appellant, on appeal only.

John Vance, Dist. Atty., and Anne B. Wetherholt, Glenn Mactaggart and Winfield Scott, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

A jury convicted appellant of aggravated robbery and assessed punishment at a fine of $10,000.00 and confinement for forty-five years in the Texas Department of Corrections.[1] The court of appeals affirmed the conviction. *Weatherall v. State*, No. 05-86-00003-CR (Tex.App.—Dallas, delivered February 19, 1987). This Court grant-

---

1. Now the Texas Department of Criminal Justice, Institutional Division.

ed appellant's petition for discretionary review and remanded the case in light of *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App. 1988). *Weatherall v. State,* No. 331–87 (Tex.Cr.App., delivered November 16, 1988). On remand the court of appeals found that the parole law instruction given in accord with Article 37.07, § 4, V.A.C. C.P., was harmless under Tex.R.App.Proc. 81(b)(2). *Weatherall,* supra, opinion on remand, delivered March 20, 1989. We granted appellant's petition to review this determination.

Appellant and his companion attacked the victim as he was riding his bicycle in the White Rock Lake area in Dallas. They knocked him off his bicycle and attempted to take the bicycle. When the victim resisted, they stabbed him with knives and beat him. Appellant's companion cut the victim's throat, while appellant stabbed him in the hand. Two joggers interrupted the attack and appellant and his companion departed, leaving the bicycle behind.

During the punishment phase of trial the State reoffered all of the evidence admitted during the guilt-innocence phase. Appellant's mother testified that appellant had never been convicted of a felony or been in trouble. The trial court included an instruction concerning the parole law under Article 37.07, § 4, V.A.C.C.P. Appellant did not object to this instruction. The court's charge included an instruction about probation and instructed the jury that the punishment range for aggravated robbery was confinement for not less than five years and not more than ninety-nine years or life, and a fine not to exceed $10,000.00.

During opening argument the prosecutor emphasized the extent of the injuries inflicted upon the victim and the fear appellant's acts had caused to those involved. He urged the jury to assess either life or a ninety-nine year term. Defense counsel urged the jury to grant probation to the 17 year old appellant so that he could pay the victim restitution. Defense counsel then said:

> You know, even under a life sentence, folks, sooner or later he's going to be repatriated to this society, even under a life sentence because the Court tells you that there's parole. One of the things I'm afraid of and I don't mind telling you one of the things I'm afraid of is if we send Derrick Weatherall to school down there in Huntsville to learn to be better as a criminal than you've already found him to be, sooner or later he's going to be repatriated with our society, if you put him in the penitentiary. Lord knows you're taking a big chance on what you're going to get when he gets out.

Defense counsel for the co-defendant next reminded the jury that "what you're here deciding is whether or not he can live in our society 'cause we know he's coming back to our society." He also urged the jury to grant probation to the co-defendant.

In closing argument, the prosecutor told the jury that the punishment phase was the part of the trial where the jury could now protect victims. He stated, "And the question is are you willing to take any risk with them by letting them back on the streets of this town any sooner than necessary?" He talked about the witnesses in the case and said, "And you can tell Patton [a witness] by your verdict how soon they'll be back in Dallas, so he can be prepared for them." After reminding the jury of what appellant and the co-defendant did to the victim, the prosecutor told the jury that the State wanted a life sentence. He continued:

> You know, it might be easy to write 25 or 30 years on that verdict form and walk out of this courthouse thinking you've done everything that's necessary. But I'll submit to you if you'll read that charge very, very carefully and remember the evidence, I'll submit that a light sentence would be a dangerous thing to do.

He also urged them to assess a $10,000.00 fine as a moral statement from the jury to appellant and the co-defendant to show how outraged the jury was by the crime.

While they were deliberating on punishment, the jury sent out a note asking, "Are the terms 99 years and life considered to be one and the same?" The trial court responded that the jury had been given all of

the law and instruction that the court was allowed to give. The jury assessed punishment at confinement for 45 years and a fine of $10,000.00.

The court of appeals stated that parole was not mentioned until defense counsel mentioned it to the jury during argument. The court found that the only other mention of parole came in the parole law instruction given to the jury in accord with Article 37.07, § 4. The court of appeals concluded that the lack of emphasis on the parole law, combined with the facts of the offense and the sentence assessed demonstrated harmless error.

The court of appeals did not have the benefit of our opinion in *Arnold v. State*, 786 S.W.2d 295 (Tex.Cr.App.1990), wherein we discussed various factors which might apply to an analysis of *Rose* error under Rule 81(b)(2). These factors included: discussion of parole during voir dire or argument by counsel; jury notes concerning parole; the sentence assessed in light of the facts and the "one-third rule;" a deadly weapon finding; the facts of the case; prior convictions; additional instructions concerning parole; and whether counsel objected to the parole instruction. These factors are not exclusive or universally applicable. As we noted in *Arnold*, supra, 786 S.W.2d at 300,

> ... [A] reviewing court must examine the record for indicia of factors reasonably conducing to affect minds of average rational jurors in their determination of punishment, the ultimate inquiry being whether it is impossible to say beyond a reasonable doubt that considering declarations made by the trial court in its § 4 instruction law did not influence the jury adversely to appellant in assessing punishment.

Keeping in mind that each case must be considered in light of the individual circumstances of that case, we turn to the instant case. The parole law was not mentioned until defense counsel talked about it during his argument to the jury. Viewing this reference to parole in the context of his entire argument, it is evident that defense counsel was urging the jury to grant probation and allow appellant to repay the victim instead of sending him to the penitentiary where he would become a "better" criminal. He stated that if the jury assessed penitentiary time, whatever term of years the jury assessed, appellant would eventually be back on the streets "better as a criminal." This reference to parole, by itself, does not pointedly direct the jury to the parole law charge such that reversal is merited. It becomes significant when viewed with other indicia of factors concerning parole.

Part of the prosecutor's closing argument urged the jury to assess the maximum so as to keep appellant confined as long as possible. Consistent with this, he cautioned the jury that while it might be easy to assess a light sentence of 25 or 30 years, that if they read the charge very carefully they would understand why such a light sentence would be dangerous. One obvious implication of this argument, when read in light of the rest of the argument about keeping appellant in the penitentiary, is that the parole instruction included in the charge informed the jury how or in what amount of time appellant might be back in society. This may not be a direct reference to parole, but such reference is easily implied given the previous argument by defense counsel that sooner or later appellant would return to society because of parole, even if given a life sentence.

After this argument the jury read the charge, including the parole law instruction. The charge did not contain any curative instruction admonishing the jury not to discuss parole. They then sent out a note asking if 99 years and life were the same. Given the 45 year term subsequently assessed, which fits the "one-third rule," a strong implication is that parole eligibility was a factor in the jury's assessment of punishment. In light of the argument alluding to parole, the parole instruction, and the 45 year punishment assessed, the indication from the note is that the jury was factoring in parole eligibility. Not every jury inquiry about the difference between 99 years and life may improperly implicate the parole law instruction.

None of these factors—the arguments by defense counsel and the prosecutor, the jury note, and the punishment assessed—individually demonstrates harm in the context of this case. However, the factors cannot be viewed separately and apart from each other as if they exist in a vacuum. When such argument and the parole law instruction are considered, in light of the jury inquiry about the difference in 99 years or life, one strong implication is that the jury was factoring parole eligibility into the determination of punishment. Add to that the 45 year term assessed, which suggests application of the parole law instruction under the "one-third rule," and the implication from these circumstances is that the parole law instruction adversely effected the jurors' determination of punishment. This combination shows an "indicia of factors reasonably conducing to affect minds of average rational jurors in their determination of punishment." Under Rule 81(b)(2), which requires reversal "unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment," we cannot say that parole law instruction made no adverse contribution to appellant's sentence.

We reverse the judgment of the court of appeals and remand the case to the trial court.

McCORMICK, P.J., and WHITE, J., dissent.