**Gabriel RAMOS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–91–00174–CR.**

Court of Appeals of Texas,
El Paso.

April 8, 1992.

Rehearing Overruled June 3, 1992.

Charles Louis Roberts, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

KOEHLER, Justice.

A jury convicted Gabriel Ramos, Appellant, of aggravated sexual assault and subsequently assessed punishment at 40 years' imprisonment. In seventeen points of error,[1] Appellant seeks review of the judgment rendered. We affirm in part and reverse in part.

The underlying facts of the case, in brief, indicate that Appellant and others abducted the two complaining witnesses (M— and G—) at knife point, took the victims to a nearby house, locked the exits, thwarted attempted escapes, forced M— to ingest illicit drugs and sexually abused both victims orally, vaginally and rectally. After being released hours later, the victims went home and later contacted the authorities. *See generally, Ortiz v. State*, 825 S.W.2d 537, 538 (Tex.App.—El Paso 1992, n.p.h.); *Hernandez v. State*, 825 S.W.2d 765, 767 (Tex.App.—El Paso 1992, n.p.h.); *Ledesma v. State*, 828 S.W.2d 560, 562 (Tex.App.—El Paso 1992, n.p.h.).

In Points of Error Nos. One through Four, Appellant contends the prosecutor impermissibly argued outside the record to the extent Appellant's due process rights were violated and a reversal is mandated. Specifically, Appellant complains of the prosecutor's statement to the jury during his closing summation at the guilt-innocence phase that the State was

---

**1.** Initially stated in Appellant's brief on appeal as nineteen assigned errors. However, Points of Error Nos. Seventeen, Eighteen and Nineteen are the same as Points of Error Nos. Nine, Ten and Eleven, respectively. In the body of the brief, Appellant added a new Point of Error No. Seventeen which is addressed herein.

prohibited from calling one of the other assailants to testify because of the privilege against self-incrimination embodied in the Fifth Amendment. Appellant objected and argued the prosecutor had ventured beyond the record. The trial court sustained the objection, but Appellant did not ask for an instruction to disregard.

█ Proper jury argument is that which can be characterized as: (1) a summary of the evidence; (2) reasonable deductions from that evidence; (3) a response to argument of opposing counsel; or (4) a plea for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex.Crim.App.1990). In order to preserve the error, if any, the accused must obtain an adverse ruling from the trial court on an objection or a subsequent request that the jury be instructed to disregard unless the challenged argument is so inflammatory that its prejudicial effect cannot be alleviated by such an instruction. *Vester v. State*, 684 S.W.2d 715, 726 (Tex.App.—Amarillo 1983), *aff'd*, 713 S.W.2d 920 (Tex.Crim.App.—1986). *See also Gonzales v. State*, 807 S.W.2d 830, 835 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). Appellant received all the relief requested in that the trial judge sustained his objection. Since an instruction to disregard was not sought, the argument, if improper, will require a reversal only if it was extreme or manifestly improper, violative of a mandatory statute or injected new and harmful facts into the trial proceedings when viewed in light of the entire record. *See Borjan*, 787 S.W.2d at 57.

Assuming *arguendo* the statement was not a proper response to Appellant's argument that the complaining witnesses' stories were incredible and that the State was unable to rehabilitate the witnesses, we conclude the statement was not so extreme or manifestly improper that an instruction to disregard would not have cured the error. Appellant interrupted the prosecutor, and the prosecutor was prohibited from completing the statement. Consequently, the full meaning of the prosecutor's comment was not before the jury. When

viewed in light of the record as a whole, we are satisfied beyond a reasonable doubt this fleeting statement did not contribute to Appellant's conviction. Thus, the error, if any, is not reversible. *See* Tex.R.App.P. 81(b)(2). As a result, we overrule Appellant's first four points of error.

█ In Points of Error Nos. Five and Six, Appellant asserts the trial court erred in overruling his objection to the prosecutor's rebuttal argument that the investigating detectives could not testify about the content of out-of-court statements made by other witnesses prior to trial. During Appellant's closing argument, counsel attacked the State's inability to rehabilitate the complaining witnesses regarding their conflicting and allegedly gap-riddled testimony. In response, the prosecutor argued: "So where are the detectives? Ladies and gentlemen, [defense counsel] is very well aware that you cannot bring in a detective to tell the jury what someone said on another—." Appellant's objections that the argument was outside the record and constituted a misstatement of the law were overruled. Thus, error, if any, was preserved.

Factually, the argument was clearly in response to Appellant's attack on the State's failure to rehabilitate the complainants' testimony. Thus, at first glance, it would appear the argument was proper. Legally, however, we conclude the prosecutor's statement was a misstatement of the law of evidence due to incompleteness. Appellant argues, without elaboration or citation to authority, the State could have properly called the detective in rebuttal to rehabilitate the witnesses. In reply, the State argues testimony by the detective was inadmissible because the trial court made no finding that the witnesses had been impeached. This argument begs the question raised on appeal since such rebuttal testimony was never offered at trial. The issue on appeal is whether the detective, *if called*, could have testified about the complainants' prior consistent statements.[2] *See* Tex.R.Crim.Evid. 801(e)(1)(B).

2. Appellant's guilt-innocence argument commingled the inconsistencies of both complaining

witnesses. Since a mistrial was ultimately granted as to M___, the present appeal pertains

The rules of evidence pertaining to hearsay prohibit admission of out-of-court statements offered at trial to prove the truth of the matter asserted. *See generally, Id.* at 801–802. However, certain out-of-court statements are specifically *excluded* from these rules as being *non-hearsay.*[3] *Id.* at 801(e)(1). Rule 801(e)(1)(B)[4] provides "[a] statement is not hearsay if: [t]he declarant testifies at the trial ... and is subject to cross-examination concerning the [prior] statement, and the statement is ... consistent with [her] testimony and is offered to rebut an express or implied charge against [her] of recent fabrication or improper influence or motive...."

The underlying question is whether the detective's testimony, had she been recalled to testify about the witnesses' prior consistent statements, would be proper rehabilitation evidence or whether it would constitute improper bolstering. *See Campbell v. State,* 718 S.W.2d 712 (Tex.Crim.App. 1986). The Court of Criminal Appeals reaffirmed the rule that the door opens for admission of prior consistent statements upon introduction of the predicate that: (1) the witness testifies at trial; (2) is subject to cross-examination; and (3) the opposition has expressly or impliedly raised the question of recent fabrication, improper influence or motive. *Id.* at 715. In the instant case, the declarants, the complaining witnesses, did testify at trial. On cross-examination, Appellant contested the witnesses' failures to include certain details about their identifications of him in the signed statements. The signed statements did not include certain facts and details which were

related during direct questioning of both G__ and M__ by the State. Appellant also elicited evidence of contradictory testimony from a prior trial of another of G__'s assailants as to the particulars of the assault.

The record clearly indicates the witnesses were skillfully impeached implying that portions of the testimony in the present trial was the result of recent fabrication. Also, Appellant elicited the fact that prior to giving the statement, M__ had identified Appellant in a photo lineup, and the detective told her Appellant's name. As a result, a potential implication of improper influence might also be indicated. Thus, the predicate for admission of prior consistent statements was established.[5] Had it chosen to do so, the State was entitled to call the detective to rebut these assertions in an attempt to rehabilitate the complainants. Appellant's trial argument properly attacked the State's failure to rehabilitate the witnesses. Consequently, the State's rebuttal argument was a misstatement of the law, and the trial court erred in overruling Appellant's objection thereto.

Nevertheless, we conclude the error is not of the magnitude which caused the rendition of an improper judgment. The prosecutor's misinterpretation of the law as stated to the jury was neither extreme nor manifestly improper. After the objection was overruled, the prosecutor did not emphasize his purported inability to call the detective to rehabilitate the complainants' testimony. Considering the record as a whole, we are convinced beyond a reason-

only to the conviction obtained relevant to G__. However, it is unnecessary to differentiate between the two complainants' testimony and the subsequent argument since the surrounding facts and circumstances are so inextricably intertwined. Furthermore, the challenged argument of the State occurred prior to the granting of the mistrial pertaining to M__.

3. Such an exclusion should not be confused with the *exceptions* to Rule 802's general prohibition against admission of hearsay. *See* Tex. R.Crim.Evid. 803–804. The Rule 801 exclusion defines certain statements as non-hearsay. To the contrary, the Rule 803 and 804 exceptions allow the admission of certain statements which are indeed hearsay.

4. Henceforth, the Texas Rules of Criminal Evidence will be referred to as the Rule or Rules.

5. A condition of admissibility arises subsequent to establishing that the predicate has been laid. Rule 801(e)(1)(B) implicitly requires confirmation that the prior consistent statement was made prior to the time that there was a motive to falsify. *See generally, Campbell,* 718 S.W.2d at 717. "A statement made after the alleged motive to fabricate arose does not rebut the allegation." *Haughton v. State,* 805 S.W.2d 405, 408 (Tex.Crim.App.1990). Nothing in the record before us indicates that either M__ or G__ were enticed to give their statements by any improper motive.

able doubt the error did not contribute to Appellant's conviction. Thus, the error is not reversible. Tex.R.App.P. 81(b)(2). Points of Error Nos. Five and Six are overruled.

■ In Points of Error Nos. Seven and Eight, Appellant contends the trial court erred in overruling his objection to the prosecutor's argument which allegedly shifted the burden to the accused by indirectly commenting upon his failure to testify. As previously noted, Appellant attacked the discrepancies and credibility of the complaining witnesses. In rebuttal, the State argued: "So it's your job to test the demeanor of the witnesses, ladies and gentlemen. And I guess when you look at [G__], and you say to yourself, well, if she isn't telling the truth, who is? What witness—if that—." Appellant interjected an objection arguing the prosecutor's comment of "who is" implied that he should have testified. In response, the prosecutor stated he meant "if that type of witness isn't telling the truth, what witness can you imagine would be?" The trial court overruled the objection.

■ On appeal, the argument is twofold. First, Appellant argues the comment clearly suggested the jury could not disbelieve G__ unless the defense had produced a witness to testify to the contrary. Secondly, he asserts the comment implicitly reminded the jury that Appellant did not testify. We disagree with both assertions. In order to violate an accused's right against self-incrimination, a prosecutorial comment must be manifestly intended or directly imply to the jury some offending language which the jury would necessarily and naturally understand to be a comment upon the accused's failure to testify. *Montoya v. State*, 744 S.W.2d 15, 35 (Tex.Crim.App. 1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). As illustrated by his explanation, the prosecutor's comment was directed only to the believability and credibility of those witnesses that did testify. We conclude the statement was not manifestly intended nor did it directly imply that Appellant failed to testify.

■ The only type of indirect allusion to an accused's failure to testify which constitutes error is a denial of fact in evidence or contradictory evidence to which only the accused could refute. *Livingston v. State*, 739 S.W.2d 311, 338 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). We perceive no manner in which the prosecutor's instant statement would have so shifted such a burden to Appellant. From a plain reading of the exchange between the attorneys, we find the explanation to be a proper and reasonable defense of the credibility of the State's witness by which the prosecutor sought to support the weight of the witnesses' testimony. Accordingly, we find the argument to be proper, and the trial court did not err in overruling the objection. Points of Error Nos. Seven and Eight are overruled.

■ Points of Error Nos. Nine, Ten and Eleven complain of the trial court's refusal to instruct the jury to disregard any of the evidence of the alleged offense involving M__ in arriving at their punishment verdict pertaining to Appellant's conviction involving G__. During the jury's guilt-innocence deliberations, a note was sent to the trial court stating that a verdict had been reached regarding the indictment concerning G__. However, the note also stated the jury had been deadlocked for six hours in consideration of the verdict concerning M__. The State moved for a mistrial, stipulated no manifest necessity existed and agreed not to reprosecute Appellant concerning the charges pertaining to M__. The trial court ordered a mistrial as to M__, but it accepted the guilty verdict as to G__.

The next day, evidence was heard regarding punishment. After the court told the State to call its first witness, the prosecutor stated: "Your Honor, at this time the State would reoffer all the evidence introduced in the guilt/not-guilt [sic] phase of the trial for admission and consideration during the punishment stage." The trial judge stated: "That will be admitted." Subsequently, G__ testified about the effects and ramifications of the assault. Af-

terward, the State rested, and Appellant presented two defense witnesses. The jury was excused, and the court held a punishment phase charge conference with the attorneys. The State reiterated it had no objections to the charge.

Appellant, however, requested the inclusion of an additional instruction that the jury could not "consider the allegations and evidence of alleged sexual assault of M___ in assessing punishment for the offense for which you have found the defendant guilty." In support of his request, Appellant argued the evidence of a sexual assault committed against M___ constituted improper extraneous offense evidence since the jury obviously had not found such an offense beyond a reasonable doubt. The request was denied. As submitted, the charge read, in part:

> You have now found the Defendant, GABRIEL RAMOS, guilty of Aggravated Sexual Assault. The matter of the amount of punishment is now referred to you, the jury.
>
> You will now proceed to assess the Defendant's punishment by confinement in the State Department of Corrections for life, or for any term of years not more than ninety-nine nor less than five, and in addition you may, if you desire, assess a fine against him not to exceed $10,000.00.

The charge also included instructions regarding suspension of sentence and/or fine, following the instructions, privilege against self-incrimination and probation. On appeal, Appellant argues the trial court erred in refusing to submit his requested instruction. We disagree.

Initially, we note Appellant failed to timely object to the admission of the evidence he now claims the jury should have been prohibited from considering. While submission of this evidence at the punishment phase was accomplished through a *pro forma* reoffer of the guilt-innocence evidence by the State, it was nonetheless an introduction of the evidence just as if the witnesses had been individually recalled during the punishment phase to physically testify. An objection, at the earliest opportunity, is required every time objectionable evidence is presented. *Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991).

If an opponent of extraneous acts does object that such evidence is inadmissible pursuant to Tex.R.Crim.Evid. 404(b), the proponent is burdened with establishing that the act has relevance apart from its tendency to prove the accused's conforming character. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App. 1991), on own motion for rehearing). Once the proponent of evidence of other crimes, wrongs or acts properly satisfies the trial court and the evidence is admitted, the trial judge, upon a timely request, should instruct the jury that their consideration of the evidence is limited to a particular purpose. *Id.* at 387–88. It is obvious that the purpose of Appellant's request during the punishment phase charge conference was to entirely preclude the jury's consideration of the evidence of the alleged assault committed against M___. Even assuming a timely objection by Appellant was overruled, he also failed to timely request a limiting instruction at the time the evidence was admitted. Consequently, any error in the trial court's failure to instruct the jury as requested was waived.

Furthermore, all evidence, facts and circumstances surrounding commission of the offense are admissible on question of punishment to be assessed. *Stoker v. State*, 788 S.W.2d 1, 7 (Tex.Crim.App.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). We conclude the testimony of M___ constituted *res gestae* evidence of the circumstances surrounding commission of the offense against G___. The exact question raised in relation to the entry of a mistrial on one of multiple charges during a common trial of a defendant has not, to our knowledge, been previously resolved in a reported decision. Although Appellant maintains M___'s testimony constituted evidence of extraneous offenses which the jury could not consider since they had been unable to previously conclude beyond a reasonable doubt Appel-

lant was guilty as to her allegations, we find consideration of this peculiar fact to be of no moment under the present circumstances. If the State had elected to try Appellant separately for the offenses allegedly committed against M— and G—, each complainant could have testified at the trial on the charges arising from the other complainant regardless of the sequence or result of the other trial.

As fact witnesses, each complainant's testimony of the ongoing events, from alpha to omega, corroborated other evidence indicating Appellant's involvement in the continuing transaction or same criminal episode. *See Arivette v. State*, 513 S.W.2d 857, 862 (Tex.Crim.App.1974). The acts to which each complainant could testify were continuous from the time of capture until their release which would show the context in which the criminal conduct occurred. *King v. State*, 553 S.W.2d 105, 106 (Tex.Crim.App.1977); *Arivette*, 513 S.W.2d at 862. The facts to which M— had knowledge are so intertwined that they are an integral part of the proof of the allegations stemming from the assault upon G—. Thus, these details not only concern but also form part of the whole criminal scheme which did not occur within a vacuum. *Arivette*, 513 S.W.2d at 862.

As *res gestae* evidence, the interwoven facts were admissible to show the jury a full contextual evaluation of the offense for which Appellant was presently being tried. *Amaya v. State*, 759 S.W.2d 737, 739 (Tex.App.—El Paso 1988, pet. ref'd). The *res gestae* evidence also enlightened jurors of events surrounding commission of that offense. *See Rogers v. State*, 774 S.W.2d 247, 257 (Tex.Crim.App.), *cert. denied*, 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989), *aff'd on denial writ of habeas corpus* at 819 S.W.2d 533 (Tex.Crim.App.1991). Since the evidence was *res gestae*, it was not necessary for the trial court to include a limiting instruction in the punishment charge. *See Arivette*,

513 S.W.2d at 864.[6] For these reasons, Points of Error Nos. Nine, Ten and Eleven are overruled.

In his last six points of error, Appellant argues he was harmed by the trial court's refusal specifically to instruct the jury not to consider the effects of parole law in assessing punishment. Although trial of Appellant's case began after passage of the constitutional amendment authorizing the legislature to enact Tex.Code Crim.Pro. Ann. art. 37.07, § 4 (Vernon Supp.1992), the punishment charge did not instruct the jury about the existence of good time or parole, nor was the jury instructed not to consider the extent or manner in which parole law might affect the punishment assessed. As would be expected, Appellant did not object to the absence of the legislated instruction in the court's charge to the jury.

However, at some point during the jury's deliberation, the trial judge received a note from the jury specifically requesting information on the percentage of time assessed as punishment would actually have to be served before Appellant would be eligible for parole. The judge proposed to respond by stating he could only refer them to the evidence and the court's charge. Alternatively, the judge noted that he would give the Code of Criminal Procedure instruction if both Appellant and the State agreed. The State did not agree. Appellant objected and argued the jury should be instructed not to consider the effects of parole in their deliberations. The objection was overruled. Subsequently, the court's response was sent to the jury as originally proposed. Approximately an hour later, the jury returned and assessed punishment at 40 years' imprisonment.

 We initially note the legislature's directive on submission of the instruction is mandatory. However, such a mandate can be waived by the failure to timely object and request submission of the

---

6. Under these circumstances, the instant case is distinguishable from the cases relied upon by Appellant which hold refusal to limit the jury's punishment phase consideration of extraneous offenses offered for only a specific purpose.

*See generally, Crossman v. State*, 797 S.W.2d 321, 326 (Tex.App.—Corpus Christi 1990, no pet.); *Rodriguez v. State*, 781 S.W.2d 443, 445 (Tex.App.—Fort Worth 1989, pet. ref'd).

instruction. *See Kinnamon v. State*, 791 S.W.2d 84, 96 (Tex.Crim.App.1990). Nevertheless, it later became obvious that the jury was, on its own initiative, considering the effects of parole law in direct violation of a statute. As a result, we conclude the issue was revived, and it became incumbent upon the trial court to give the jury a curative instruction that they did not cloud their deliberations with parole[7]—even though Appellant had arguably waived any error by not requesting inclusion of the instruction at the time the charge was initially submitted. Thus, we find the court erred in its refusal, upon Appellant's timely request, to give a "curative" instruction. *See generally, Rose v. State*, 752 S.W.2d 529, 552 (Tex.Crim.App.1988).

Having found error pertaining to consideration of parole matters by the jury in punishment phase deliberations, we are required to review the record to determine whether such error harmed Appellant.[8] Although the trial court did not give a "curative" instruction, the judge did respond by referring the jury to the evidence and to the court's charge. The charge included the admonition that the jury was bound and governed by the law "as it is given" by the court in the instructions. Appellate courts generally presume the jury followed the instructions, but this presumption is rebuttable. *Id.* at 554. But *see Griffin v. State*, 811 S.W.2d 221, 224 (Tex.App.—Houston [1st Dist.] 1991, no pet.) (in a case where parole charge was given, no presumption arises that jury did not consider the effect of the parole laws). We conclude that the presumption that the jury followed the instruction is rebutted due to the undeniable fact that the jury initially strayed from the law as given by the court in its charge. Moreover, we find it improbable that the subsequent generic censure from the court referring the jury to the evidence and the charge sufficiently limited their deliberations to the proper parameters.

We have not made this determination lightly. We note that the Court of Criminal Appeals has criticized appellate courts' use of the limited factors considered by the Court in Rose to determine that the error in use of the formerly unconstitutional parole charge did not contribute to the sentence imposed. *See Arnold v. State*, 786 S.W.2d 295, 310–13 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990). Thus, we are compelled to heed the Court of Criminal Appeals' latest direction in assessing whether the jury's potential consideration of the effects of parole law did not contribute to Appellant's 40–year sentence. In *Arnold*, appellate courts are instructed to consider several factors such as: (1) whether parole was mentioned during voir dire; (2) whether the accused objected to submission of a parole law instruction in the charge; (3) whether prosecutor urged jury to consider parole in argument; (4) whether jury indicated, by notes to the court, they were considering parole law in deliberations; (5) punishment assessed; (6) whether an application for probation was impliedly rejected by jury; (7) whether a "curative" instruction was also given; and (8) the facts of the particular case. *Id.* at 301–12.

In applying such queries to this case, the instant facts run directly askew of the circumstances addressed by the Court of Criminal Appeals in *Lehman v. State*, 792 S.W.2d 82, 88 (Tex.Crim.App.1990). In *Lehman*, the Court found no reversible error because there was:

[A]bsolutely *no* indication that the jury took the parole laws into account when

---

7. We note the Court of Criminal Appeals' disfavor in the purported curative effect of the traditional and Section 4 statutory "curative" instructions. *Arnold v. State*, 786 S.W.2d 295, 311 n. 23 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990). However, we conclude some specific instruction should have been given to direct the jury's proper assessment of punishment.

8. We note that the tables are turned in the present case in that the circumstances present an unusual course of events from which a point of error would normally be raised on the issue. Regardless, the record must establish beyond a reasonable doubt that the court's refusal to specifically instruct the jury to disregard the possible effects of parole did not contribute to the punishment assessed. See Tex.R.App.P. 81(b)(2).

setting [the accused's] sentence [due to] the fact that [the accused] received the minimum punishment for his crime (short of probation), considering that there was no mention of parole laws during voir dire or argument of counsel, and recognizing the absence of any note from the jury asking a parole related question,.... (Emphasis in original).

*Lehman,* 792 S.W.2d at 88. Hence, the judgment was affirmed. To the contrary, the instant circumstances illustrate the jury did consider application of parole laws, and Appellant was not given the minimum sentence. While we do not know beyond all doubt whether or not the jury did in fact apply their own perceptions of parole law in assessing punishment, it is reasonable to assume that they did do so in light of the note asking for such information. Since nothing in the record rebuts this evidence, a reasonable doubt does exist.

The factors enumerated in *Arnold* are neither exclusive, nor must they be universally applied in every case. *Weatherall v. State,* 803 S.W.2d 313, 315 (Tex.Crim.App. 1991). Since factors which may weigh on the minds of jurors vary both qualitatively and quantitatively, there is no bright-line rule from which a reviewing court can determine that the length of sentence assessed, in and of itself, was or was not proper under the circumstances of the individual case. *See Arnold,* 786 S.W.2d at 313 n. 26. Consequently, the only finding which we can make on a purely objective basis in this case is that Appellant received more than the minimum sentence.[9] However, just as in *Weatherall,* the jury's transmittal of a note requesting information on parole and the assessment of a 40–year sentence which fits the "one-third rule" strongly infers that the jury factored in good time and parole eligibility. 803 S.W.2d at 315–16.

We do recognize that the prosecutor mentioned the possibility of parole or the effect of good time in neither his voir dire of the jury panel nor in his arguments at summation. Nevertheless, we conclude this absence alone to be insufficient, in light of their note, to overcome the strong possibility that the jury considered the effects of parole in assessing punishment. Again, we lend weight to the lack of a "curative" instruction. Moreover, we have considered both the facts of the case and Appellant's lack of any prior felony convictions as initially mentioned in *Rose.* 752 S.W.2d at 554. The combination of all these circumstances establishes an indicia reasonably conducive to a finding that the minds of an average rational juror would have been affected in the assessment of punishment. *Weatherall,* 803 S.W.2d at 316. In sum, we conclude the record does not establish beyond a reasonable doubt that the trial court's refusal to instruct the jury to disregard any parole law consideration did not contribute to the assessment of a 40–year sentence. Accordingly, we sustain Points of Error Nos. Twelve, Thirteen, Fourteen, Fifteen, Sixteen and Seventeen.

Having overruled Appellant's points of error which pertain to the guilt-innocence phase of the trial, we affirm the judgment of conviction. However, due to the reversible error in the punishment phase as indicated above, we reverse the trial court's judgment as to the punishment and remand the cause to the trial court for a new trial on punishment only.

---

9. In passing, we note, albeit beyond the instant record, three of the complainant's other assailants were convicted and sentenced to terms of imprisonment ranging from 65 years to life on identical "heinous" facts arising from the same criminal episode. *See Ortiz,* 825 S.W.2d 537; *Hernandez,* 825 S.W.2d 765; *Ledesma,* 828 S.W.2d 560. However, we are instructed that consideration of such facts is "slippery" and that a finding reliant thereon is not satisfactory. *See Arnold,* 786 S.W.2d at 312 and at n. 24.