**Opinion filed August 25, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00035-CR

_____

## VERNON LLOYD RITCHEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-18-1662-CR**

## M E M O R A N D U M   O P I N I O N

Vernon Lloyd Ritchey, Appellant, appeals from his conviction on a single count of continuous sexual abuse of a young child and his convictions on three counts of sexual assault of a child. *See* TEX. PENAL CODE ANN. §§ 21.02, 22.011 (West Supp. 2021). Appellant was found guilty of all four counts, and the jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for seventy-five years for Count One and twenty

years each for Counts Two, Three, and Four. The trial court cumulated the sentences. Appellant challenges his convictions in two issues: first, that the trial court erred in providing incorrect punishment phase jury instructions, which caused egregious error, and second, that the trial court failed to administer the proper oath to the jury venire panel. *See* TEX. CODE CRIM. PROC. ANN. art. 35.02 (West 2006), art. 37.07 (West Supp. 2021). We overrule both issues and affirm the trial court's judgments.

*Factual and Procedural History*

Appellant was convicted on four charges relating to the sexual assault of the same child, M.B. M.B. made an outcry to her mother in 2018 after her mother found a cell phone allegedly given to her by Appellant. Her mother asked Appellant's wife if the phone looked familiar, and Appellant's wife confirmed that it looked like Appellant's old phone. M.B.'s mother took M.B. to Harmony Home, a children's advocacy center for children and teens who allege sexual or physical abuse, and Sylvia Athayde conducted a forensic interview with M.B. on May 11, 2018. During the interview, M.B. detailed the occurrences of rape and molestation inflicted upon her by Appellant. M.B. told Athayde that the abuse began when she was twelve years old and continued until "a few months" before the interview in May 2018. Athayde indicated that during the interview, M.B. provided information which pointed to evidence of grooming behaviors by Appellant.

M.B.'s mother also testified that before she found M.B. with Appellant's phone, she had noticed several changes in M.B.: M.B. had been lying about and struggling with things related to school; her attitude had changed; she seemed depressed; she had suicidal thoughts; and she had harmed herself. M.B. testified, detailing the sexual abuse and indicating that it began when she was twelve and ended after she turned fourteen, as well as how she became suicidal and began to change her appearance to look less appealing.

2

Following the jury's finding of guilt on all four charges, the State and Appellant presented witnesses before the jury deliberated on punishment. The State urged the jury to give Appellant the maximum punishment on each of the four charges, citing his grooming of M.B., the damage he caused to her family, and the need for him to pay for taking away her childhood and leaving her to deal with that trauma for the rest of her life. The State additionally indicated that Appellant was more dangerous because he was "completely unrepentant and thinks he did nothing wrong." Appellant's trial counsel urged the jury to consider Appellant's performance as a husband, provider, and father in determining the appropriate sentence for each offense.

After the jury assessed Appellant's punishment, the trial court sentenced him accordingly and, on motion of the State, cumulated the sentences. Appellant appealed.

On appeal, Appellant presents two issues for our review. We address Appellant's second issue first, as it pertains to the jury selection process, and then address the first issue, which concerns the punishment charge.

*Issue Two: The Jury Venire Oath—A Presumption of Proper Empanelment*

In Appellant's second issue, he contends that the trial court failed to administer the required oath to the jury venire panel before the beginning of voir dire.

The Texas Code of Criminal Procedure requires the court to administer an oath to the jury venire panel before the beginning of voir dire. CRIM. PROC. art. 35.02. This provision ensures that any statements made by prospective jurors are made under oath. *Hollek v. State*, No. 13-16-00402-CR, 2017 WL 1380525, at *1 (Tex. App.—Corpus Christi–Edinburg, Feb. 2, 2017, no pet.) (mem. op., not designated for publication) (citing *Duffy v. State*, 567 S.W.2d 197, 200 (Tex. Crim. App. 1978)). We must presume on appeal that the jury was properly empaneled and

sworn unless the matter was disputed in the trial court or the record affirmatively shows that the trial court failed to complete the proper procedure. TEX. R. APP. P. 44.2(c)(2). When the record is silent on the matter, it is not enough to amount to an "affirmative" showing. *Hollek*, 2017 WL 1380525, at \*1 (citing *Osteen v. State*, 642 S.W.2d 169, 171 (Tex. Crim. App. 1982); *Duffy*, 567 S.W.2d at 201).

The statutory presumption that the jury was properly empaneled and sworn was not rebutted in this case. Appellant made no objection to the proceeding or to the jurors at any point. Appellant argues that, because the court reporter included transcript notations that individual witnesses were sworn and that the selected jury panel was sworn, but included no such notation as to the venire panel, there is an affirmative showing that the venire panel was not sworn. This merely demonstrates that the record is silent, not that there is affirmative evidence that the venire panel was not sworn. *See Duffy*, 567 S.W.2d at 201; *Hollek*, 2017 WL 1380525, at \*2; *Stiggers v. State*, No. 05-97-01373-CR, 2000 WL 150851, at \*2 (Tex. App.—Dallas Feb. 14, 2000, no pet.) (not designated for publication). Appellant has not pointed to any affirmative evidence to overcome the presumption that the jury was properly empaneled and sworn in this case. Rule 44.2(c)(2), therefore, mandates that we presume on appeal that the jury was properly empaneled. We overrule Appellant's second issue.

*Issue One: The Jury Charge as to Counts Two, Three, and Four—Amended Texas Code of Criminal Procedure Article 37.07, section 4(a)*

In Appellant's first issue, he argues that, with respect to Counts Two, Three, and Four, the trial court provided improper instructions in its punishment charge, causing Appellant egregious harm and preventing him from receiving a fair and impartial sentencing.

*A. Applicable Law*

The Texas Legislature amended Texas Code of Criminal Procedure Article 37.07, section 4(a)–(c) in 2019. Act of May 15, 2019, 86th Leg., R.S., ch. 260, § 3, 2019 Tex. Gen Laws 446, 446–48 (codified at CRIM. PROC. art. 37.07, § 4(a)–(c)). The amendments apply to any defendant sentenced after September 1, 2019. *See id.* at 448; *Lewis v. State*, No. 09-21-00082-CR, 2021 WL 6129129, at *8 (Tex. App.—Beaumont Dec. 29, 2021, no pet.) (mem. op., not designated for publication). Appellant was sentenced on February 4, 2020, making the revised language of Article 37.07, section 4(a) the language that should have been included in the punishment charge with respect to the sexual assault convictions.[1]

Section 4(a) states in relevant part that the trial court shall instruct the jury during the punishment phase as follows:

> The length of time for which a defendant is imprisoned may be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law might be applied to this defendant if sentenced to a term of imprisonment, because the application of that law will depend on decisions made by parole authorities.

---

[1]We note that Article 37.07, section 4(a) does not apply to Appellant's conviction for continuous sexual abuse of a young child. *See* TEX. GOV'T CODE ANN. § 508.145(a)(2) (West Supp. 2021) (providing that an inmate convicted of continuous sexual abuse of a young child "is not eligible for release on parole").

> You may consider the existence of the parole law. You are not to consider the manner in which the parole law may be applied to this particular defendant.

CRIM. PROC. art. 37.07, § 4(a). There is no reference to "good conduct time" in the current version of Article 37.07, section 4(a). The Texas Court of Criminal Appeals has indicated that the legislature chooses language for a reason and that not utilizing statutorily mandated language is a violation of the law. *See Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002). When a trial court errs in not using the proper language, and the defendant does not object, we will not reverse unless the record shows egregious harm to the defendant. *Lewis*, 2021 WL 6129129, at *9 (referencing *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). Under the *Almanza* egregious harm standard, the record must show the defendant suffered actual—not theoretical—harm from the charge error. *Almanza*, 686 S.W.2d at 174. "Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *Lewis*, 2021 WL 6129129, at *9 (quoting *Ngo*, 175 S.W.3d at 750 (internal quotes omitted)).

There are four factors to consider when assessing egregious harm in the context of an erroneous jury instruction incorporating the concepts of parole eligibility or good conduct: (1) the presumption that the jury followed any mitigating instruction; (2) the state of the evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial court record as a whole. *Addison v. State*, No. 05-18-01263-CR, 2020 WL 4251068, at *4 (Tex. App.—Dallas, July 24, 2020, no pet.) (mem. op., not designated for publication); *see also Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Hooper v. State*, 255 S.W.3d 262, 270–72 (Tex. App.—Waco 2008, pet. ref'd).

6

*B. Analysis*

The State concedes that the trial court erred by providing an incorrect parole law instruction to the jury, and we agree that it was improper. Appellant did not object to the punishment charge at trial; therefore, the charge error is reviewed for egregious harm using the *Almanza* factors. *See Hooper*, 255 S.W.3d at 270. Only those charge errors that result in egregious harm will be reversed. *Addison*, 2020 WL 4251068, at *4.

First, we consider whether the charge itself mitigates against the finding of egregious harm. *See id.* There is a rebuttable presumption that a jury will follow any curative instructions given by the trial court. *Lewis*, 2021 WL 6129129, at *9. Here, the punishment charge deviated from the statutory language:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment for Sexual Assault of a Child . . ., *may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.*
>
> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment for Sexual Assault of a Child, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed, *without consideration of any good conduct time he may earn.* If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law *and good conduct time might be applied to this defendant* if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

7

You may consider the existence of the parole law *and good conduct time*. However, you are not to consider the extent to which *good conduct time may be awarded to or forfeited by this particular defendant*. You are not to consider the manner in which the parole law may be applied to this particular defendant. Such matters come within the exclusive jurisdiction of the Pardon and Parole Division of the Texas Department of Criminal Justice and the Governor of Texas.

(Emphasis added). Despite the addition of the good conduct time language, the charge included the following mitigating instruction:

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant . . . .

. . . However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

The mitigating language that was included in the punishment charge communicated to the jury that there was no way that the jurors could accurately predict how good conduct time might affect Appellant or how to calculate the impact of future good conduct and that they were not to try to factor into their deliberations the extent to which good conduct would determine actual jail time. The curative instructions are presumed to have been followed unless there is contrary evidence.

Appellant points out that the instruction includes a reference to "good conduct time" six times prior to a single admonition that the jury is not to consider the extent to which that time may be considered for the defendant. While theoretical harm may be argued, "[a]bsent any evidence or other record indications to the contrary, we presume the jurors understood and followed the trial court's instructions in the jury charge." *Addison*, 2020 WL 4251068, at *4. It is actual harm that must be shown from the charge error. *Alamanza*, 686 S.W.2d at 174.

The trial court was consistent in including the admonition in the punishment charge, even after receiving a jury note. The jury note read: "Are the charges, Counts

8

One, Two, Three, Four, going to be stacked, or as one sentence." The trial court responded only by referring the jury back to the court's punishment charge, without objection from either party. When there is a jury note inquiring about parole or good conduct time, courts are more prone to find egregious harm. *Hooper*, 255 S.W.3d at 272. The jury note, however, did not mention parole or good conduct time. Rather, it questioned whether the recommended sentences would be served concurrently or cumulatively. The court in *Hooper* noted several cases in support, but all are distinguishable from this case. *See Villarreal v. State*, 205 S.W.3d 103, 107–10 (Tex. App.—Texarkana 2006, pet. dism'd) (holding that a noncomplying parole instruction in response to a jury question about parole did cause egregious harm); *Rogers v. State*, 38 S.W.3d 725, 728–29 (Tex. App.—Texarkana 2001, pet. ref'd) (holding that the trial court's failure to provide a complete or proper response in answering a jury question about a life sentence resulted in egregious harm to the defendant); *Ramos v. State*, 831 S.W.2d 10, 17–18 (Tex. App.—El Paso 1992, pet. ref'd) (holding that refusal by the trial court to properly provide the jury with statutory language, which included not only the parole law but also an instruction to not consider the effects of parole, resulted in reversible error). In each of these cases, the jury clearly requested information related to *actual time served* versus *time sentenced*, and the trial court responded with information that constituted a new instruction, or one that did not match the statutory language, and did not include any sort of admonition.

Here, Appellant only speculates on whether the jury also contemplated parole and the effect of good conduct time. There is nothing in the record to indicate that the jury was considering good conduct time or that they were disregarding the admonition in the punishment charge. Prior to responding to the jury's note, the trial court allowed the parties an opportunity to object to the response and, having no objections, properly directed the jury back to the punishment charge. Without a

9

showing in the record that the jury disregarded the trial court's charge, we are left to presume that the trial court's admonition was sufficient and that the jury followed this instruction. Thus, the first factor does not weigh in favor of concluding that Appellant was egregiously harmed by the erroneous jury instruction.

Second, we consider the state of the evidence. *See Addison*, 2020 WL 4251068, at *4. Appellant does not contend that the evidence was insufficient to find him guilty of the offenses of sexual assault against a child. In fact, during closing argument of the punishment phase, his attorney told the jury that Appellant "respects your verdict" and that he "understands the serious nature of these charges that he's been convicted of." M.B. testified, along with her mother, Athayde, M.B.'s stepfather, and investigating officers Texas Ranger Phillip Breeding and Wink Police Officer Jose Soltero. There was ample evidence presented to show that M.B. was repeatedly sexually assaulted by Appellant for a time period between the ages of twelve and fourteen. Appellant's trial counsel strategically encouraged the jury to remember that Appellant was a father, husband, and provider for his family. Nothing in the record indicates that the jury was unreasonable in their finding of guilt or punishment. The second factor does not weigh in favor of concluding Appellant was egregiously harmed by the erroneous jury instruction.

Third, we consider argument of counsel and any emphasis on the possibility of parole—or good conduct time—to the jury. *See Addison*, 2020 WL 4251068, at *4. Appellant's trial counsel provided no reference to good conduct time or parole in his argument to the jury. Similarly, the State provided no reference to good conduct time or parole in its argument to the jury. The third factor does not weigh in favor of concluding Appellant was egregiously harmed by the erroneous jury instruction.

Fourth, we consider, from the record as a whole, any other relevant information. The punishment range for these offenses ranged from life or any term

not less than 25 years or more than 99 years for Count One, and not less than 2 years or more than 20 years for Counts Two, Three, and Four. *See* PENAL §§ 21.02(h), 22.011(f), 12.33(a). Although the State requested the maximum sentence for Count One, the jury took twenty-five years off of the maximum. But for Counts Two, Three, and Four, the maximum sentence was given. A number of factors could weigh heavily, including the youth of the victim and the number of years of abuse, in deciding the severity of Appellant's sentence and, here, would mitigate against finding egregious harm. The evidence related to punishment was exceptionally strong. *See Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006) (Despite an improper jury charge, there was no finding of egregious harm when the maximum sentence was imposed in a sexual assault case, where defendant, a teacher, drove a fifteen-year-old female student to a motel, had sex with her, continued his relationship with her after he was indicted, and attempted to bribe her to drop the charges. Additionally, evidence showed he had asked another female student to take a similar trip.); *Stewart v. State*, 293 S.W.3d 853, 857–58, 860 (Tex. App.—Texarkana 2009, pet. ref'd) (finding no egregious harm, despite jury charge error, where the evidence related to punishment was "exceptionally strong").

During the punishment phase, the State called M.B.'s mother to testify. She testified that M.B. became withdrawn and depressed, began doing poorly in school, and had to move away. She also talked about how the sexual assault incidents also negatively impacted the rest of the family. Appellant and his wife testified on his behalf. Appellant testified that he respected the jury's guilty verdicts but reminded the jury that he had not previously been convicted of any crimes. Appellant's wife testified that Appellant provided for their family, that he supported her following a miscarriage, and that he was a wonderful father to her two boys before they had their daughter. Appellant's wife was asked what punishment she would recommend if

11

someone sexually assaulted her own daughter, and she responded that she knew there should be "some sort of punishment" and that she "support[ed] it completely."

In closing argument, the State's attorney reminded the jury that Appellant groomed M.B., stole her childhood, and committed numerous sexual assaults, the trauma of which will stay with her forever. The State encouraged the jury to impose the maximum sentence for each Count, as a "message" to M.B. that what Appellant did was not okay and as a statement that M.B.'s pain is worth the maximum punishment. Appellant's attorney did not present any alternative number of years for the jury to impose.

Because of the strong argument in favor of severe punishment, as well as testimony of the impact Appellant's actions had and would have on M.B.'s life, the jury could have viewed the sexual assault here as especially heinous. Encouraging the jury to impose the maximum punishment to show M.B. "what she's worth" and "what her pain is worth" might be persuasive to a reasonable jury in light of the evidence discussed above. The fourth factor does not weigh in favor of concluding that Appellant was egregiously harmed by the erroneous jury instruction.

As all four factors weigh against concluding that Appellant was egregiously harmed by the erroneous jury instruction, we overrule Appellant's first issue.[2]

---

[2]This type of error typically does not result in egregious harm. *See Alaniz v. State*, No. 11-19-00399-CR, 2022 WL 2720477, at * 1 n.2 (Tex. App.—Eastland July 14, 2022, no pet. h.) (reaching the same result as we do here and citing multiple recent cases from sister courts of appeals addressing the same issue and reaching the same result, including *West v. State*, No. 10-20-00087-CR, 2022 WL 1105645 (Tex. App.—Waco April 13, 2022, no pet.) (mem. op., not designated for publication); *Jackson v. State*, No. 03-20-00085-CR, 2022 WL 257451 (Tex. App.—Austin Jan. 28, 2022, pet. ref'd) (mem. op., not designated for publication); *Lewis v. State*, No. 09-21-00082-CR, 2021 WL 6129129 (Tex. App.—Beaumont Dec. 29, 2021, no pet.) (mem. op., not designated for publication); *Holiness v. State*, No. 06-21-00038-CR, 2021 WL 4483519 (Tex. App.—Texarkana Oct. 1, 2021, pet. ref'd) (mem. op., not designated for publication); *Addison v. State*, No. 05-18-01263-CR, 2020 WL 4251068 (Tex. App.—Dallas July 24, 2020, no pet.) (mem. op., not designated for publication); and *Guerra v. State*, No. 06-19-00239-CR, 2020 WL 3634390 (Tex. App.—Texarkana July 6, 2020, pet. ref'd) (mem. op., not designated for publication)).

*This Court's Ruling*

We affirm the judgments of the trial court.

W. BRUCE WILLIAMS

JUSTICE

August 25, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.