**Oscar Glen BELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–93–00578–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

June 30, 1994.

Robert G. Yack, Richmond, for appellant.

John Gregory Gilleland, J. Sidney Crowley, Richmond, for appellee.

Before SEARS, LEE and WILLIAM E. JUNELL (sitting by designation), JJ.

## OPINION

JUNELL, Justice (sitting by designation).

This is an appeal of a conviction for driving while intoxicated ("DWI"). A jury found appellant Bell guilty, and the court assessed his punishment at 120 days in the county jail. He complains that the trial court (1) refused to submit jury instructions on the issue of his consent to the taking of a blood sample and (2) denied him the opportunity to earn good-conduct time during his jail term. We reverse.

On July 4, 1992, at approximately 10:35 p.m., Bell ran his car into a ditch. A witness saw the car leave the road, stopped to render aid, and saw Bell sitting behind the wheel with no one else in the car or leaving the scene. Trooper James Hacker and his partner were dispatched to investigate. They found Bell still seated behind the wheel, his face cut and bleeding. Emergency medical personnel arrived, administered first aid, and took Bell to the hospital. Police did not interview Bell at the scene.

In the emergency room, Trooper Hacker took some preliminary information from Bell. Even though Bell lay on a gurney with an oxygen mask over his face, Trooper Hacker detected the odor of alcohol coming from Bell. Hacker thought that Bell should remain in the hospital for treatment, and he did not submit Bell to the usual field-sobriety tests.

Trooper Hacker read Bell the statutory warnings required when a blood sample is requested from a person under arrest for DWI. Trooper Hacker then asked Bell for a blood sample and read Bell the text of a consent form. Trooper Hacker testified that Bell orally consented to the taking of the blood sample but was unable to sign the consent form because of his injuries; Trooper Hacker annotated the consent form,

"Could not sign," where Bell's signature would have been. Nurse Priscilla Crotchett was on duty when Bell was brought into the emergency room. She testified that Bell orally consented to Trooper Hacker's request for a blood sample. However, she also stated that Bell did not sign the consent form although, in her opinion, he *was able* to do so. She drew the blood sample from Bell.

Trooper Hacker testified that Bell was not actually under arrest even though the statutory warnings and consent form that he read to Bell so stated. However, Hacker also testified that he never told Bell that he was *not* under arrest.

Bell testified that he had no memory of the accident itself. He recalled being in the car afterward and being taken to the hospital by ambulance. He testified that he refused to sign "some papers" offered to him by the police, though he did not know what the papers were. He stated that he did not consent to the taking of a blood sample for police use. He allowed Nurse Crotchett to take the blood sample because he thought the sample was to be used for medical purposes. He could not remember whether he had ever been told that he was under arrest. At 3:22 a.m., Bell signed hospital release papers and walked home.

The analysis of Bell's blood revealed a blood-alcohol level of 0.22 grams per 100 milliliters, and the test results were introduced into evidence at Bell's trial.

In points of error one and two, Bell complains that the trial court erred in denying requested jury instructions regarding Bell's refusal to give consent to the taking of a blood sample while he was under arrest (or regarding withdrawal of any deemed consent).

"[I]t is ... well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant, and whether it be strong, weak, unimpeached, or contradicted." *Bell v. State,* 693 S.W.2d 434, 442 (Tex.Crim.App.1985), quoting *Thompson v. State,* 521 S.W.2d 621, 624 (Tex.Crim.App. 1974).

■■■ The version of Article 6701*l*–5 of the Revised Statutes effective at the time of Bell's accident provided in pertinent part:

Section 1. Any person who operates a motor vehicle upon the public highways ... in this state shall be *deemed to have given consent,* subject to the provisions of this Act, to submit to the taking of one or more specimens of his breath or blood for the purpose of analysis to determine the alcohol concentration ... *if arrested* for any offense arising out of acts alleged to have been committed while a person was driving ... a motor vehicle while intoxicated. Any person so arrested may consent to the giving of any other type of specimen to determine his alcohol concentration, but he shall not be deemed, solely on the basis of his operation of a motor vehicle upon the public highways ... in this state, to have given consent to give any type of specimen other than a specimen of his breath or blood. The specimen, or specimens, shall be taken at the request of a peace officer having reasonable grounds to believe the person to have been driving ... a motor vehicle upon the public highways ... in this state while intoxicated.

Act of June 16, 1983, 68th Leg., R.S., ch. 303, § 4, 1983 Tex.Gen.Laws 1577, 1577–78 (amended 1993) (current version at Tex.Rev. Civ.Stat.Ann. art. 6701*l*–5, § 1 (Vernon Supp.1994).

[Section 3.] (h) Any person who is dead, unconscious, or otherwise in a condition rendering the person incapable of refusal, whether the person was arrested or not, shall be deemed not to have withdrawn the consent provided by Section 1 of this Act. If the person is dead, a specimen may be withdrawn.... If the person is not dead but is incapable of refusal, a specimen may be withdrawn....

*Id.* at 1584 (current version at art. 6701*l*–5, § 3(h)).

These provisions permit the State to take a blood sample from a motor-vehicle operator, under arrest or not, who is incapacitated and unable to give express consent. However, if reasonable grounds do not exist for a driver's arrest, consent to the taking of a blood specimen is not implied by law, and the State

must prove that actual consent was positive and unequivocal and obtained without duress or coercion. *State v. Williams,* 814 S.W.2d 256, 260 (Tex.App.—Austin 1991), *aff'd on other grounds,* 832 S.W.2d 52 (1992). These implied consent provisions also enable the State to rely at trial on a statutory presumption of consent in the absence of evidence that the defendant resisted giving a specimen. *Rodriguez v. State,* 631 S.W.2d 515, 516 (Tex.Crim.App.1982); *see also Nebes v. State,* 743 S.W.2d 729, 730–31 (Tex.App.—Houston [1st Dist.] 1987, no pet.).

> Section 2. (a) Except as provided by Subsection (i) of Section 3 of this Act, if a person under arrest refuses, upon the request of a peace officer, to give a specimen designated by the peace officer as provided in Section 1, none shall be taken.
>
> (b) Before requesting a person to give a specimen, the officer shall inform the person orally and in writing that if the person refuses to give the specimen, that refusal may be admissible in a subsequent prosecution, and that the person's license, permit, or privilege to operate a motor vehicle will be automatically suspended for 90 days after the date of adjournment of the hearing provided....

Act of June 16, 1983, 68th Leg., R.S., ch. 303, § 4, 1983 Tex.Gen.Laws 1577, 1578–79 (amended 1993) (current version at Tex.Rev. Civ.Stat.Ann. art. 6701*l*–5, § 2(a) & (b) (Vernon Supp.1994).

> [Section 3.] (i) A peace officer shall require a person to give a specimen under Section 2 of this Act if:
>
> (1) the officer arrests the person for an offense under Subdivision (2), Subsection (a), Section 19.05, Penal Code, or an offense under Article 6701*l*–1, Revised Statutes, as amended;
>
> (2) the person was the operator of a motor vehicle involved in an accident that the officer reasonably believes occurred as a result of the offense;
>
> (3) at the time of the arrest the officer reasonably believes that a person has died or will die as a direct result of the accident; and
>
> (4) the person refuses the officer's request to voluntarily give a specimen.

*Id.* at 1584 (current version at art. 6701*l*–5, § 3(i)).

These provisions affect arrested persons who are not incapacitated. If § 3(i) does not apply, the police may take a blood sample from such a person only with his consent. *See McCambridge v. State,* 698 S.W.2d 390, 395 (Tex.App.—Houston [1st Dist.] 1985, *rev'd on other grounds,* 712 S.W.2d 499 (1986) (statute prohibits the violent taking of a specimen from a resisting, conscious person who refuses to signify his cooperation by signing a consent form). Of course, if consent is not given, the person automatically loses his driving privileges for 90 days and the refusal can be used as evidence against him.

Article 38.23 of the Code of Criminal Procedure provides:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event the jury shall disregard any such evidence so obtained.

\* \* \* \* \* \*

Tex.Code Crim.Proc.Ann. art. 38.23(a) (Vernon Supp.1994).

Bell contends that there were fact issues whether he was under arrest at the time his blood sample was drawn and whether he did not consent or withdrew any deemed consent. If there was some evidence that Bell was under arrest and did not consent or withdrew his consent, then there was some evidence that the blood sample was taken in violation of art. 6701*l*–5, § 2(a). In this circumstance, Bell argues, the jury should have been instructed that, if they believed that evidence, they must disregard the blood-test results (an art. 38.23 instruction).

First, we agree with Bell that there was some evidence that Bell was under arrest at the time the blood sample was taken. As Bell was lying on the emergency room gurney, Trooper Hacker read to Bell the statutory warnings required under art. 6701*l*–5, § 2(b). The warnings were read from a DIC–24 form, captioned "Police Officer DWI Statutory Warning:"

*You are under arrest* for the offense of Driving While Intoxicated. You will be requested to submit to the taking of a specimen of your ... blood ... for the purpose of analysis to determine the alcohol concentration ... in your body.

[Warnings per art. 6701*l*–5, § 2(b) ]

I certify that I have orally informed you of the consequences of a refusal and have provided you with a complete and true copy of this statutory warning. I now request that you submit to the taking of a specimen of your ... blood ... for the purpose of analysis to determine the alcohol concentration ... in your body.

\* \* \* \* \* \*

(Emphasis added.)

Trooper Hacker signed the form.

This DIC–24 form was clearly intended for use with persons *under arrest* for DWI. Art. 6701*l*–5, § 2(b) and the associated refusal form serve to promote the gathering of scientific evidence of intoxication against a person arrested for DWI. A person so arrested is faced with the choice of submitting to a blood test or suffering an automatic 90–day suspension of his driving privileges. A refusal to give a blood sample also empowers the State to use that refusal as evidence against the accused. Trooper Hacker's use of the DIC–24 form with its statutory warnings was only appropriate if Bell were under arrest for DWI. Consequently, the very fact that the form was read to Bell was some evidence that Bell was under arrest.

Furthermore, the effectiveness of the refusal form is premised on a genuine, truthful communication between the arresting officer and the accused, and Trooper Hacker told Bell, "You are under arrest," as set out on the form. Trooper Hacker also read to Bell

from the "Subject's Consent Form:" "Be it remembered that on this day of 4th, July 1992, I, Oscar Glen Bell, *having been placed under arrest* on a charge of driving a motor vehicle on a public highway while intoxicated, do voluntarily give a specimen of my blood to J.A. Hacker." (Emphasis added.) The State argues that Trooper Hacker's communications to Bell were no evidence that Bell was actually under arrest because Hacker testified that he only "read the form that said [Bell] was under arrest." We reject this argument. Bell was either under arrest or he was not, and Trooper Hacker communicated to Bell twice that he was. A reasonable person, injured and lying on a hospital stretcher, hearing from a police officer the words "you are under arrest" and "placed under arrest," could conclude that he was not free to leave. *See Williams*, 814 S.W.2d at 259–60 (a person has been seized if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave; fact that peace officer advised driver that he was under arrest supported determination that driver was under arrest); *see also Johnson v. State*, 838 S.W.2d 906, 907–08 (Tex.App.—Corpus Christi 1992, pet. ref'd).

The State's reliance on *Burkhalter v. State*, 642 S.W.2d 231 (Tex.App.—Houston [14th Dist.] 1982, no pet.), is misplaced. In *Burkhalter*, we held that, "[t]he mere fact that an officer makes the statement to an accused that he is under arrest is not enough to complete the arrest." *Id.* at 233. However, Burkhalter was initially detained at the scene of an accident and told that he was under arrest, but he was then released to a hospital where he was not restrained in any way. There was no mention in the opinion of any evidence that police told Burkhalter at the hospital that he was under arrest. Under those facts, we held that Burkhalter was not under arrest at the time his blood sample was taken at the hospital, even though he had been told earlier at the scene of the accident that he was under arrest. Nor can the State rely on *Mersiovsky v. State*, 638 S.W.2d 527 (Tex.App.—Tyler 1982, no pet.), where, under facts similar to the present case, the court held that the accused was not

under arrest. *Id.* at 529. In *Mersiovsky*, there was no discussion of any evidence that the police told the defendant he was under arrest by reading from a refusal or consent form or otherwise.

In the present case, Bell was twice told he was under arrest while he was injured and lying relatively helpless on a hospital gurney. We find that there was some evidence that Bell was under arrest at the time his blood sample was taken. It was for the jury to determine whether a reasonable person in Bell's situation, hearing Hacker's words, would have felt free to leave. *See Williams, supra; Johnson, supra.*

■ Next, we also agree with Bell that there was some evidence that Bell withheld consent to the taking of the blood sample (or withdrew any implied consent).

Bell testified on direct examination:

Q: [DEFENSE COUNSEL] What were [the officers] trying to get you to do?

A: [BELL] Trying to get me to sign some papers and I refused.

Q: You know what kind of papers they were?

A: No.

Q: You say you refused to sign those papers?

A: Yes, sir.

\* \* \* \* \* \*

Q: And while you were in the emergency room, what happened after they were trying to get you to sign a piece of paper?

A: ... All I know is the nurse said she was going to take some blood.

Q: Did she tell you why?

A: No, she just said I'm going to take some blood. So I'm already in the hospital. They take the blood.

Q: So you didn't object to her taking the blood?

A: No, I didn't object to her taking the blood. I thought it was for medical purposes or whatever. How could I object? Normally if you go to the hospital, they are going to take blood anyway to the

best of my knowledge. I guess that's the procedure.

\* \* \* \* \* \*

Q: You say you refused to sign the papers, the papers the officers wanted you to sign. How did you refuse? Do you recall?

A: I told them, "Hey, I'm not going to sign it. I can't sign that."

Nurse Crotchett testified on direct:

Q: [PROSECUTOR] And was [Bell] able to sign any sort of written consent at that time if you recall?

A: [NURSE CROTCHETT] I think. It's my opinion I think he was able to, but I don't believe he signed.

Q: So in other words it was your opinion he was able to do it, but he didn't do it?

A: Yes.

The following dialogue occurred during Bell's cross-examination:

Q: [PROSECUTOR] Now you don't remember what the nurse said when they took the blood; is that what you testified to?

A: [BELL] I didn't say that. I said she told me she was going to take my blood and I thought it was for medical purposes. I didn't give anything to support the State.

\* \* \* \* \* \*

Q: [PROSECUTOR] Okay, sir. So it's possible you could have consented to the blood test?

A: [BELL] No, I could not. I remember that. . . .

There was evidence that the "papers" offered to Bell to sign were the statutory warning form and the consent form.

It was for the jury to decide whether or not to believe Bell and disbelieve other witnesses who said they heard Bell consent to the taking of the blood sample. *See Penagraph v. State,* 623 S.W.2d 341, 343 (Tex. Crim.App.1981).

The State argues in its brief: "By its very terms, TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, § 2(a) only applies to persons under arrest. *There is no requirement that consent be*

*obtained from persons not under arrest.*" (Emphasis added.) At trial, the prosecutor argued to the trial court: "[E]ven if there was an involuntary taking, even if they had held him down and drew blood from his veins while he was screaming and hollering, it would still be a situation where there are *no Constitutional rights infringed on by the involuntary taking of body fluids.*" (Emphasis added.) The State's position seems to be that a law-abiding citizen has less protection against the bodily intrusion of the taking of a blood sample than does a person under arrest for DWI. This cannot be the law.

■ It is true that there is no constitutional impediment to the involuntary taking of a blood sample under the *self-incrimination* protections of the *Fifth Amendment* to the United States Constitution or under Art. I, § 10, of the Texas Constitution. *Schmerber v. California,* 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966); *Olson v. State,* 484 S.W.2d 756, 771 (Tex.Crim.App. 1969). However, the taking of a blood sample is a *"search and seizure"* within the meaning of the *Fourth Amendment* to the United States Constitution and Art. I, § 9, of the Texas Constitution. *Weaver v. State,* 721 S.W.2d 495, 497 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). Under these latter constitutional provisions, a warrantless taking of a blood sample without the donor's consent could be justified "where there [was] a *bona fide* danger of the alcohol dissipating from the blood before the evidence [could] be gathered, and where the officer had probable cause to arrest the defendant [for an alcohol-related offense]." *Id.* However, the Texas Legislature has enlarged upon what is constitutionally required in providing that consent must nevertheless be obtained when a person is under arrest for an alcohol-related driving offense. Art. 6701*l*–5, § 2(a).

The logic of the State's position seems to be that if the police had probable cause to arrest a suspect for DWI, but did not actually arrest him, then they could take a blood sample from the suspect without his consent, holding him down, "screaming and hollering," if necessary. This is clearly not the intent of the Texas statutory scheme, not to mention the physical practicality of having to arrest

an unwilling suspect in order to insert the needle and draw the blood sample. *See Williams,* 814 S.W.2d at 260 (if reasonable grounds do not exist for driver's arrest, consent to taking of blood specimen is not implied by law and State must prove that actual consent was positive and unequivocal and obtained without duress or coercion).

As we interpret the statutory scheme, if the police have probable cause, they can arrest the accused, give him his statutory warnings, and ask for his consent. If the accused refuses to consent, his blood may not be taken, but he loses his license for 90 days and his refusal can be used against him. The only time that a blood sample can be taken against a suspect's will is when the elements under art. 6701*l*–5, § 3(i) have been met, specifically, when the officer reasonably believes that a person has died or will die as a direct result of an accident involving the suspect. Such circumstance is not present in the case at bar.

In sum, we find that there was legal evidence raising fact issues on whether Bell was under arrest for DWI and whether Bell did not consent to the drawing of the blood sample (or withdrew any deemed consent). Therefore, the trial court erred in failing to give the jury the instruction required by art. 38.23(a) of the Code of Criminal Procedure.

■ Art. 38.23(a) is mandatory, and the trial court's failure to submit Bell's requested charge is automatically reversible error. *See Stone v. State,* 703 S.W.2d 652, 655 (Tex. Crim.App.1986.). Moreover, even if a harm analysis were required, we would reverse. Since Bell objected to the error in the charge, we reverse if the error caused some harm. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985), *cert. denied,* 481 U.S. 1019, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987). We look for actual adverse impact on the fairness or reliability of the trial. *See Saunders v. State,* 817 S.W.2d 688, 690 (Tex. Crim.App.1991).

In final argument, Bell's counsel stated:
BELL'S COUNSEL: I don't think there is any doubt there was an accident and that Mr. Bell was driving. Cindy Bates said she was there within a very short

period of time. But *the issue comes down did he consent* to the taking of his blood. *If he did not consent* to the taking of his blood, *you don't have to consider it* under Texas law.

PROSECUTOR: I object. He is outside the charge.

THE COURT: Let's stay within the charge.

(Emphasis added.)

In its final argument, the State emphasized the blood-test results. During deliberations, the jury sent out inquiries to the trial court concerning the law of consent and requesting a rereading of Nurse Crotchett's testimony on Bell's oral consent. The trial court did provide the requested testimony by Nurse Crotchett but referred the jury to the charge of the court on the law, which charge contained no instruction on consent or art. 38.23. Bell was denied a jury instruction on a key fact issue in his case and an instruction that would have permitted the jury to disregard critical prejudicial evidence. We presume that a jury properly considered the evidence when correctly instructed by the trial judge. *Cobarrubio v. State,* 675 S.W.2d 749, 752 (Tex.Crim.App.1983), *overruled on other grounds,* 700 S.W.2d 208 (1985). However, when no instruction is given, we cannot presume that the jury properly considered the evidence at trial. We find that Bell has shown some harm. We sustain points of error one and two.

Although the State did not contend that Bell failed to preserve error, we nevertheless address the issue.

■■■ Bell could have challenged the legality of the taking of the blood sample in one of three ways: (1) by filing a pretrial motion to suppress evidence, (2) by waiting until the trial on the merits and objecting when the alleged unlawfully-obtained evidence was offered, *or* (3) by raising a factual dispute concerning the circumstances of the taking of the blood and requesting an article 38.23 jury instruction. *Johnson v. State,* 743 S.W.2d 307, 309–10 (Tex.App.—San Antonio 1987, pet. ref'd). Bell's counsel stated "no objection" to the admission of the blood test results. But the central issue on an article

38.23 instruction is not the *admissibility* of the evidence, but rather, the evidence's *consideration* by the jury. *See Scott v. State,* 434 S.W.2d 678, 680 (Tex.Crim.App.1968), *cert. denied,* 395 U.S. 925, 89 S.Ct. 1781, 23 L.Ed.2d 242 (1969) (instruction to be given the jury when there is evidence on voluntariness relates to their consideration of the confession, not its admissibility). In other words, by not objecting to the blood test results, Bell waived any right to challenge the admissibility of the evidence or to instruct the jury that they *must* disregard it. *See Ramos v. State,* 831 S.W.2d 10, 16 (Tex. App.—El Paso 1992, pet. ref'd) (error waived when appellant failed to timely object to the admission of evidence he now claims the jury should have been *prohibited* from considering). In the present case, Bell did not challenge the *admissibility* of the blood test evidence. He chose instead to raise a fact issue on Bell's consent and obtain an instruction that if the jury resolved the fact issue in Bell's favor, i.e., if they found that Bell did not consent to the taking of the blood sample, then they would disregard the blood test evidence.

To preserve error in the trial court's refusal to submit an article 38.23 jury instruction, Bell need only have complied with TEX.CODE CRIM.PROC.ANN. arts. 36.14 *or* 36.15 (Vernon Supp.1994).

Article 36.14, The Court's Charge, provides in pertinent part:

... Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing distinctly specifying each ground of objection. Said objections may embody errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omission therefrom or in failing to charge upon issues arising from the facts and in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge, as herein provided. The requirement that the objections to the court's charge be in writing will be complied with if the objections are dictated to

the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury. Compliance with the provisions of this Article is all that is necessary to preserve, for review, the exceptions and objections presented to the charge. . . .

*Id.* art. 36.14.

Article 36.15, Requested Special Charges, provides in pertinent part:

Before the court reads his charge to the jury, counsel for both sides shall have a reasonable time to present written instructions and ask that they be given to the jury. The requirement that the instructions be in writing is complied with if the instructions are dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury. The court shall give or refuse these charges. The defendant may, by a special requested instruction call the trial court's attention to error in the charge, as well as omissions therefrom, and no other exception or objection to the court's charge shall be necessary to preserve any error reflected by any special requested instruction which the trial court refuses.

*Id.* art. 36.15.

 * * * * * *

■ In the present case, Bell submitted "requested instructions" in writing to the trial court. However, Bell did not include them in the record on appeal. Nor were they "dictated" into the record. Therefore, article 36.15 cannot provide a basis for the preservation of Bell's complaint.

■ However, in *James v. State*, 774 S.W.2d 418, 419, 420 (Tex.App.—Dallas 1989, pet. ref'd), the court relied on article 36.14 in holding that the following objection, transcribed into the record, was sufficient to preserve error in the denial of a requested instruction:

[Defendant objects] on the basis that [the charge] fails to include the lesser included offense of theft and we ask that the Court include the lesser included offense of theft in the charge with the corresponding instruction with reference to theft as compared to robbery.

*Id.* at 419.

In the present case, during a hearing on the court's charge, Bell stated to the trial court:

[There] is an issue of fact and law as to whether or not consent was voluntarily given in this case, your Honor. Mr. Bell has testified that consent—he did not consent. There has been testimony from Officer Hacker and Nurse Crotchett that he did give consent. There is a fact issue as to whether consent was actually given. It's our contention that if no valid consent was obtained, then the blood sample was obtained illegally and the jury can never get to consider that fact until such time as they find that consent was voluntarily given.

 * * * * * *

Article 6701*l*–5 from the Texas Penal Code specifically says that any person that has been arrested must give their consent before having their blood drawn from them. It's our contention that Mr. Bell was arrested. He was informed that he was under arrest.

Further, Article 38.23, Evidence Not to be Used in the second paragraph states "In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes or has a reasonable doubt that the evidence was obtained in violation of the provisions of this article, then in such event the jury shall disregard any such evidence so obtained." Paragraph A says "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas or of the Constitution or laws of the United States of America shall be admitted into evidence against the accused on the trial of any criminal case." The issue is to consent and consent is an issue under the driving while intoxicated statute. We submit that this is a proper jury charge, 38.23 Code of Criminal Procedure.

■ Special requested instructions and objections to the charge need only put the trial court on notice of an omission or error

in the charge. *See Stone,* 703 S.W.2d at 655; *Foster v. State,* 767 S.W.2d 909, 912 (Tex. App.—Dallas 1989, pet. ref'd); *and James, supra.* In *Stone,* the appellant's requested charge was clearly incorrect: it misstated the law and constituted an impermissible comment on the evidence. *Stone, supra.* Nevertheless, despite obvious errors in the requested charge, the Court held that "the trial court understood that appellant was objecting to the omission of an instruction regarding the officer's right to stop the vehicle." *Id.*

We find that Bell's objection was sufficient to put the trial court on notice the Bell was objecting to the lack of a jury instruction on consent and article 38.23. Bell preserved error.

 In point three, Bell argues that the trial court erred in denying him the opportunity to accrue good-conduct time while Bell served his sentence in the county jail. The trial court sentenced Bell to 120 days in the county jail to be served "straight through the weeks," with no good time to be given by jail personnel.

Our disposition on points one and two renders this point of error moot. However, we note that TEX.CODE CRIM.PROC.ANN. art. 42.-032, § 2 (Vernon Supp.1994) provides:

> The sheriff in charge of each county jail may grant commutation of time for good conduct, industry, and obedience. A deduction not to exceed one day for each day of the original sentence actually served may be made for the term or terms of sentences if a charge of misconduct has not been sustained against the defendant.

*Id.*

The trial court does not have the authority to restrict a sheriff's discretion concerning the granting of good-conduct time. *Ex parte Hall,* 838 S.W.2d 674, 676 (Tex.App.—Dallas 1992, no pet.).

Having sustained Bell's points one and two, we reverse the judgment and remand the cause for a new trial.

SEARS, Justice, dissenting.

I respectfully dissent from the majority opinion.

Although there are many problems with the majority opinion, there are two issues which are dispositive of this appeal.

## REQUESTED INSTRUCTION

Points of error one and two allege the trial court erred in refusing to give the instruction appellant had requested in appellants motion "Number 4." However, "Number 4" is not included in the record on appeal. Failure to bring forward a complete record on appeal waives the right to complain of a matter which is omitted from the record. *Murillo v. State,* 839 S.W.2d 485, 493 (Tex.App.—El Paso 1992, no pet).

The majority admits appellant did not comply with Article 36.15 because he failed to include his written request in the record and failed to "dictate" his requested instruction into the record. However, they cite a Dallas opinion to bootstrap appellant into a preservation of error via Article 36.14. Article 36.14 pertains to the "Courts Charge" and errors or omissions in the charge. However, it is Article 36.15, "Requested Special Charges," that specifically deals with "instructions." It is the failure to give an *instruction* that is the basis of appellant's complaint. In Point of Error One, appellant starts by stating: "The court's charge to the jury on guilt/innocence contains no *instruction....*" (emphasis added). Appellant ends by stating: "The trial court reversibly erred in overruling appellant's objection to the failure of the charge to include an *instruction....*" (emphasis added). In Point of Error Two, appellant begins by stating: "The Court's charge to the jury ... contains no *instruction ...*" (emphasis added). Appellant concludes by stating: "The trial court reversibly erred in overruling appellant's objection to the failure of the charge to include an *instruction....*" (emphasis added). The appellant mainly argues the issue of consent, or withdrawal of consent, entitled him to an *instruction* on the voluntariness of appellant's consent to the taking of blood. *Appellant never argues or cites Article 36.14!*

Appellant complied with Article 36.15 by submitting his requested instruction in writing; Defendants Motion "Number Four." Appellant then *argued* to the court that he was entitled to his requested *written instruction.* The majority would find the trial court erred in denying the written request, *without ever seeing what appellant requested.* The majority reverses the trial court judgment simply because appellant *argued* that he was entitled to an instruction. This is not, has never been, and will never be the law. And the reason is simple—it opens the door wide to allow chicanery to enter. A criminal defense attorney could present the trial court with a written requested instruction that was clearly wrong and which would mislead and confuse the jury. The attorney could then argue his right to *an instruction* pursuant to the applicable statutes and articles. The trial court would obviously deny the *written* instruction, and if the defendant is convicted, the attorney has cleverly built in error upon which Appellate courts would reverse the conviction. All he has to do is omit the written instruction from the record on appeal.

The law is clear and logical—when you complain of error in the trial court's failure to give the *written instruction requested,* and fail to include the written instruction in the record, error is waived. *Murillo v. State,* 839 S.W.2d 485, 493 (Tex.App.—El Paso 1992, no pet).

### WAIVER

The second issue that is dispositive of this appeal is appellant's waiver of his right to complain of the failure to instruct on involuntary consent to take a blood test. When the results of the blood test were offered into evidence by the State, the court asked the attorney for appellant; "any objections?" The attorney for appellant responded, "no objection." If the blood sample was taken without his consent and in violation of appellant's constitutional or statutory rights, the results of the test are inadmissible. However, if appellant fails to object to the introduction of the evidence, it is admissible. Whether it was taken voluntarily or against the appellant's constitutional rights becomes *moot.* Therefore, there is no reason for an instruction to the jury as to whether appellant "voluntarily" consented. Failure to object to the introduction of the evidence complained of, waives appellant's right to an instruction on the issue. *Ramos v. State,* 831 S.W.2d 10, 15–16 (Tex.App.—El Paso 1992, pet ref'd).

I would overrule points of error one and two, sustain point of error three regarding good time, give appellant the good time he requests, and affirm the judgment of the trial court.