In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00103-CV
______________________________


ROY JON, Appellant
Â 
V.
Â 
VICTOR TUATAGOLOA, ET AL., Appellees


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 01C0311-005


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Roy Jon appeals the dismissal with prejudice of his civil suit against four employees of the
Texas Department of Criminal JusticeâInstitutional Division. We modify the judgment to provide
that the dismissal is without prejudice, and affirm the judgment as so modified.
Â Â Â Â Â Â Â Â Â Â Â Â On February 26, 2001, Jon, an indigent inmate proceeding without counsel, sued Victor
Tuatagola, Otis Bruce, Rodney Dixon, and Chauncey Miles, in their individual capacities, alleging
assault with personal injuries and a subsequent denial of needed medical care. On June 22, 2001,
a motion to dismiss was filed, which was not made a part of the record on appeal. By its order dated
May 29, 2003, the trial court dismissed Jon's suit with prejudice on the bases that (1) the suit was
frivolous, and (2) Jon had failed to comply with Chapter 14 of the Texas Civil Practice and
Remedies Code.
Â Â Â Â Â Â Â Â Â Â Â Â On appeal, Jon contends the trial court erred in dismissing his suit (1) because it was done
sua sponte without a hearing, (2) because Jon raised a fact issue under the Texas Tort Claims Act
and the Eighth Amendment to the United States Constitution by alleging a beating by the prison
staff, (3)Â because Jon raised such a fact issue by alleging denial of needed medical care after that
beating, (4) because the dismissal was with prejudice, and (5) because he had requested discovery
that was improperly denied. Appellees defend the dismissal by arguing that Jon failed to comply
with Chapter 14 by failing to file a proper affidavit of previous lawsuits as required by Tex. Civ.
Prac. & Rem. Code Ann. Â§ 14.004 (Vernon 2002) because Jon's affidavits (A) failed to provide
adequate designation of "operative facts" involved in Jon's previous lawsuits and (B)Â failed to state
that the lawsuits listed in Jon's affidavits were all of Jon's prior lawsuits.
Â Â Â Â Â Â Â Â Â Â Â Â In its discretion, a trial court may dismiss a suit filed by an indigent inmate either before or
after service of process if it finds the claim is frivolous or malicious. Tex. Civ. Prac. & Rem. Code
Ann. Â§ 14.003(a) (Vernon 2002). An inmate who files an affidavit or unsworn declaration of
inability to pay costs must file a separate affidavit or unsworn declaration identifying every suit he
or she has previously filed pro se, except suits filed under the Texas Family Code. Tex. Civ. Prac.
& Rem. Code Ann. Â§ 14.004(a)(1). The affidavit must, among other things, state the operative facts
for which relief was sought. Tex. Civ. Prac. & Rem. Code Ann. Â§ 14.004(a)(2).
Â Â Â Â Â Â Â Â Â Â Â Â A trial court may dismiss a suit under Section 14.003(a) without a hearing when an inmate
fails to file an affidavit meeting the requirements of Section 14.004. Gowan v. Tex. Dep't of Crim.
Justice, 99 S.W.3d 319, 321â23 (Tex. App.âTexarkana 2003, no pet.); Thomas v. Knight, 52
S.W.3d 292, 293 n.2 (Tex. App.âCorpus Christi 2001, pet. denied); Williams v. Brown, 33 S.W.3d
410, 411 (Tex. App.âHouston [1st Dist.] 2000, no pet.).
Â Â Â Â Â Â Â Â Â Â Â Â Jon filed an affidavit listing individually a number of suits he had filed. As to many of the
lawsuits listed, the operative facts are not given. Since Jon's affidavit does not provide the operative
facts, his lawsuit may be dismissed in the trial court's discretion. Thompson v. Rodriguez, 99 S.W.3d
328, 330 (Tex. App.âTexarkana 2003, no pet.). Also, Jon's affidavit fails to state that it lists all
suits he has filed, as requiredâanother reason why his suit was subject to being dismissed. Id.;
Gowan, 99 S.W.3d at 322.
Â Â Â Â Â Â Â Â Â Â Â Â The dismissal, however, should have been without prejudice. Thomas v. Skinner, 54 S.W.3d
845 (Tex. App.âCorpus Christi 2001, pet. denied); Knight, 52 S.W.3d at 292. Dismissal with
prejudice under Section 14.004 should be used only in rare circumstances, such as when the trial
court determines that the deficiencies in the affidavit are purposeful. Cf. Williams v. Tex. Dep't of
Crim. Justice-Institutional Div., No. 14-01-00640-CV, 2002 Tex. App. LEXIS 5808, at *7 (Tex.
App.âHouston [14th Dist.] Aug. 8, 2002, pet. denied) (not designated for publication) (opportunity
to amend not taken, thus deficiencies were purposeful and dismissal with prejudice proper). In this
circumstance, we should modify the judgment to make the dismissal without prejudice. See Moore
v. Zeller, 108 S.W.3d 373, 374 (Tex. App.âBeaumont 2003, no pet.).
Â Â Â Â Â Â Â Â Â Â Â Â Because dismissal was proper on the grounds discussed heretofore, it is not necessary for us
to discuss the other allegations of error raised by Jon.
Â Â Â Â Â Â Â Â Â Â Â Â We modify the judgment of the trial court to provide that the dismissal is without prejudice,
and we affirm the trial court's judgment as modified.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â February 20, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â March 4, 2004



and others).

 Further, Washburn was under the age of twenty-one at the time of the accident. It is beyond
dispute that Trooper Anderson had probable cause to arrest Washburn for driving under the influence
by a minor. A person under the age of twenty-one "commits an offense if the minor operates a motor
vehicle in a public place while having any detectable amount of alcohol in the minor's system." Tex.
Alco. Bev. Code Ann. § 106.041 (Vernon 2007). Reviewing de novo the finding of probable
cause, we conclude Anderson had probable cause to arrest Washburn for driving under the influence
by a minor or for DWI.

 The next issue is whether Washburn was under arrest at the time of the offense. The State
cites Bell v. State, 881 S.W.2d 794 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd), which
contains almost identical facts to the case at issue. In Bell, the defendant was transported to a
hospital following an automobile accident where he ran his car into a ditch. Id. at 796. The officer
detected the odor of alcohol on the defendant's breath but did not conduct any sobriety tests. Id. At
the hospital, the officer read the DIC-24 form to the defendant and requested a blood sample. Id. 
Even though the arresting officer testified Bell was not under arrest, the Fourteenth District Court
of Appeals concluded there was evidence to support a conclusion the defendant was under arrest
when he consented to the taking of a blood specimen. Id. at 800.

 Other cases with similar facts to this case have likewise concluded the defendant was under
arrest. See, e.g., Nottingham v. State, 908 S.W.2d 585, 587 (Tex. App.--Austin 1995, no pet.)
(defendant under arrest at hospital when she had sustained injuries in an automobile accident, she
had failed horizontal gaze nystagmus (HGN) test, officer detected odor of alcohol, and she was read
DIC-24 warnings); State v. Williams, 814 S.W.2d 256, 259 (Tex. App.--Austin 1991), aff'd, 832
S.W.2d 52 (Tex. Crim. App. 1992) (defendant under arrest at hospital when he had sustained injuries
in one-car accident, his eyes were red and bloodshot, his speech was slurred, he failed HGN test, and
he was read DIC-24 warnings).

 Trooper Anderson testified that, while he believed he had probable cause to arrest Washburn
at the time he requested a specimen, he never arrested Washburn. (4) Washburn argues that it "is
apparent that the trooper used the DIC-24 out of cautiousness, not because he intended to place
Appellant under arrest." However, the subjective intent of law enforcement officials is irrelevant
unless that intent is somehow communicated or otherwise manifested to the suspect. Dowthitt, 931
S.W.2d at 254. The test is whether a reasonable person would believe his or her freedom of
movement was restrained to the degree associated with a formal arrest. 

 Under the circumstances of this case, the manifestation of probable cause by the defendant,
combined with other circumstances, would lead a reasonable person to believe that he or she is under
restraint to the degree associated with an arrest. When asked what had happened, Washburn
responded, "I'm not going to lie to you. I have been drinking," and was obviously aware of the facts
giving rise to probable cause, such as the fact that he was the driver of a vehicle which struck a tree. 
Further, there were other circumstances which would lead a reasonable person to conclude that an
arrest had occurred. At the time of the request, Washburn was receiving medical care at the hospital
and was informed he was being investigated for a crime. Further, Washburn testified he remembered
being read the warnings contained in form DIC-24 and admitted that the first sentence of the
warnings states, "You are under arrest for an offense . . . ." 

 The mere fact that Trooper Anderson read Washburn form DIC-24 is some evidence
Washburn was under arrest. In Bell, the Fourteenth District Court of Appeals held "the very fact that
the form was read to Bell was some evidence that Bell was under arrest." Bell, 881 S.W.2d at 799. 
But see Combest v. State, 981 S.W.2d 958, 960 (Tex. App.--Austin 1998, pet. ref'd) (holding that
no arrest occurred despite DIC-24 warnings because "[a]ppellant and the State both agree[d] and the
record affirm[ed]" that appellant was not under arrest). The Fourteenth District also noted "the mere
fact that an officer makes the statement to an accused that he is under arrest is not enough to
complete the arrest." Bell, 881 S.W.2d at 799 (quoting Burkhalter v. State, 642 S.W.2d 231, 233
(Tex. App.--Houston [14th Dist.] 1982, no pet.)). Although the reading of form DIC-24 may not
be sufficient by itself to constitute an arrest, it is a significant factor in determining whether a
reasonable person would believe he or she was free to leave. We agree with the Austin Court of
Appeals that, "[w]hile the officer might have considered the language of the DIC-24 form to be
merely a formality, a reasonable person in appellant's position would believe that [he or she] was not
free to leave after being told by a police officer that [he or she] was under arrest." See Nottingham,
908 S.W.2d at 588. There is no evidence that Anderson informed Washburn he was not under arrest
or was free to leave. (5) Under the facts of this case, a reasonable person would believe his or her
freedom of movement was restrained to the degree associated with a formal arrest. See Tex. Dep't
of Pub. Safety v. Latimer, 939 S.W.2d 240, 244 (Tex. App.--Austin 1997, no pet.) (defendant in
hospital after being read a form containing the words "[y]ou are under arrest"--a reasonable person
would not believe he was free to leave). The manifestation of probable cause by the defendant,
combined with the other circumstances at the time of the request, would lead a reasonable person
to believe that he or she is under restraint to the degree associated with an arrest. We conclude
Washburn was in fact under arrest at the time of the request.

Washburn's Consent Was Voluntary

 Washburn's only argument that his consent was involuntary is that the warnings were
incorrect and rendered his otherwise voluntary confession involuntary. Washburn testified he did
not freely consent to the specimen because he "was afraid [he] was going to lose [his] license." If
he had not been told his driver's license would be suspended, Washburn testified he would have
refused to provide a specimen. As discussed above, Washburn was under arrest at the time the
request was made. As such, the warnings given by Trooper Anderson were appropriate. Because
Washburn was under arrest at the time Anderson requested the specimen, Washburn was not
misinformed concerning the consequences of refusal. 

 Consent to search is one of the well-established exceptions to the constitutional requirements
of both a warrant and probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973);
Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). "Although the federal constitution
only requires the State to prove the voluntariness of consent by a preponderance of the evidence, the
Texas Constitution requires the State to show by clear and convincing evidence that the consent was
freely given." Carmouche, 10 S.W.3d at 331; see Montanez v. State, 195 S.W.3d 101, 105 (Tex.
Crim. App. 2006). To be valid, a consent to search must be positive and unequivocal and must "not
be coerced, by explicit or implicit means, by implied threat or covert force." Id. Consent is "not
established by 'showing no more than acquiescence to a claim of lawful authority.'" Id.

 The record contains sufficient evidence that Washburn's consent was voluntary. Anderson
testified it was clear Washburn had consented to the blood specimen. Washburn testified he was
read the DIC-24 form and admitted giving consent to the taking of a blood specimen. We grant
almost total deference to trial courts' determinations when they are based on an evaluation of
credibility and are supported by the record. No error has been shown in the trial court's
determination that Washburn's consent was freely and voluntarily given. See Masterson v. State, 155
S.W.3d 167, 170 (Tex. Crim. App. 2005). 

 For the reasons stated, we overrule Washburn's sole point of error and affirm the trial court's
judgment.

 


 Jack Carter

 Justice


Date Submitted: August 7, 2007 

Date Decided: September 5, 2007


Publish 
1. An exception to the right to withdraw the implied consent exists if the requirements of
Section 724.012(b) are satisfied. See Tex. Transp. Code Ann. Â§ 724.012 (Vernon Supp. 2006);
Badgett v. State, 42 S.W.3d 136, 138-39 (Tex. Crim. App. 2001); Broadnax v. State, 995 S.W.2d
900, 904 (Tex. App.--Austin 1999, no pet.). The predicates for taking an involuntary blood
specimen were not established in this case.
2. See Erdman v. State, 861 S.W.2d 890, 894 (Tex. Crim. App. 1993); State v. Woehst, 175
S.W.3d 329, 333 (Tex. App.--Houston [1st Dist.] 2004, no pet.) (defendant established a causal
connection between the officer's misinformation and her consent); State v. Sells, 798 S.W.2d 865,
867 (Tex. App.--Austin 1990, no pet.).
3. We note the Dallas Court of Appeals has held consent under the implied consent statute is
"not implied absent an arrest" and the withdrawal of consent statutes are not applicable when the
suspect has yet to be arrested. Knisley, 81 S.W.3d at 482; see Tex. Transp. Code Ann.
Â§Â§Â 724.001-.014 (Vernon 1999 & Supp. 2006). Because, as discussed below, Washburn was under
arrest at the time Trooper Anderson requested the specimen, it is not necessary for us to determine
whether a suspect's driver's license can be revoked if the request is made when the suspect is not
under arrest. 
4. The context of Anderson's testimony indicates he believed that a suspect was under arrest
only when the suspect was physically restrained in some manner. Anderson denied ever restraining
Washburn with handcuffs. A person can be under arrest even when he or she is not physically
restrained. See Woods v. State, 466 S.W.2d 741, 743 (Tex. Crim. App. 1971).
5. We note Trooper Anderson testified Washburn was "free to leave if he wanted to . . . against
medical advice." However, there is no evidence Washburn was informed he was free to leave. 
When asked whether he had "restrained [Washburn's] movement in any way," Anderson responded,
"The hospital did that."