**Opinion issued February 28, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01087-CR

————————————

**LEONARD A. HULL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1317022**

---

## MEMORANDUM OPINION

The jury found appellant guilty of intoxication manslaughter and, after appellant pleaded true to two enhancements, the trial court assessed his punishment at fifty-five years' confinement. In appellant's sole issue on appeal, he contends

that the trial court committed reversible error by denying his motion to suppress his statement to an officer while he was immobilized for emergency treatment in a hospital. We affirm.

## BACKGROUND

On February 14, 2009, appellant, Leonard Hull, and five of his friends went to drink at a sports bar called Black Jack's. The group included appellant, Jonathan Lewis, Amanda Willis, Christopher Sneed, and Vanessa Losser. Subsequently, they all drove to Johnny's, another bar located nearby. The group continued drinking at Johnny's until it closed at 2:00 a.m. After that, they returned to Black Jack's to drink some more. The group left Black Jack's around 3:00 a.m. in their respective cars. Jonathan Lewis drove his burgundy red Mitsubishi with Amanda Willis. Christopher Sneed and Vanessa Losser drove in another car. Appellant drove a blue Jeep, and Christopher Green, the decedent rode with him.

Elizabeth Johnson was driving on Queenston and West Little York on her way home from a friend's house. As she approached a stoplight, she saw two cars speed behind her and swerved around her. One of the vehicles was the blue Jeep driven by appellant and the other was the burgundy car driven by Lewis. She saw both cars stop at the stop light in front of her and saw the group laughing and joking with each other through their windows. She testified that when the light turned green, both cars sped off as if they were racing each other. Five to six

2

minutes later, when she stopped at another traffic light, a woman ran to her car crying hysterically and asked her to call 911. Johnson pulled over, called 911, and walked to the accident scene to help. She testified that the same blue Jeep she had seen at the intersection earlier had collided with a tree. She saw appellant, who she identified as the driver of the blue Jeep, on the ground outside the car. Lewis, the driver of the burgundy car, reached the scene before Johnson and helped appellant out of the car. Johnson looked into the Jeep to see if anyone else needed help and saw the male on the passenger side, crushed between the Jeep and the tree.

Deputy J. Thomas of the Harris County Sheriff's Department arrived at the scene and spoke with the witnesses. He investigated the scene and determined, based on the tire tracks and debris, that the car hit two different curbs and flew approximately thirty feet before hitting the tree. He also testified that the vehicle hit the tree on the front right side, and the decedent in the passenger seat was crushed at the place of impact, between the vehicle and the tree. It was later determined that the decedent died at the scene from multiple blunt force injuries as a result of the accident.

Deputy Thomas contacted Deputy P. Begley and requested that he to go the hospital where appellant was being transported. Based on his investigation at the scene, he believed that alcohol played a role in the accident. Deputy Thomas requested that Deputy Begley speak to appellant and check for signs of

3

intoxication. When Deputy Begley arrived at the hospital, he waited for appellant's arrival, and later for the emergency staff to assess his medical needs

When Deputy Begley approached appellant, appellant was in a hospital bed on a backboard, with a C-collar around his neck and lower leg injuries. Appellant was in the emergency room in a double-stacked room that can hold two patients. There was one other person in the room at the time. Appellant was not under arrest at the time. At that point, neither Deputy Begley nor any other law enforcement officer had told appellant that he was under arrest. Deputy Begley testified that, at the time, he did not intend to arrest appellant. He wanted speak to appellant about the collision, see what happened, and check for signs of intoxication or impairment. When he spoke to appellant, he testified that he smelled alcohol emanating from his person.

First, Deputy Begley asked appellant for basic identification information, including his address and phone number to see that if it matched the information on his driver's license. Appellant was responsive and conscious. Then Deputy Begley asked him what happened in regards to the collision, and appellant responded that he did not remember. When Deputy Begley asked him specifically if he was involved in the collision, appellant responded, "What the fuck do you think?" When asked what type of vehicle he was in, appellant responded that he did not remember. When asked who was sitting in the vehicle with him, he

4

responded that he did not remember. He also told Deputy Begley that he did not remember anything prior to the crash and did not respond when asked whether he was racing another vehicle. Deputy Begley then asked him if he had consumed any alcohol. Appellant responded that he had "a lot." He specifically stated that he drank "four Crown and waters." Deputy Begley then asked him if he had taken any medication or illegal narcotics, to which appellant said no. Deputy Begley also asked whether appellant had eaten anything that day and when was the last time he slept. Deputy Begley determined, based on his questioning and the alcohol odor, that appellant was intoxicated. He then proceeded to try to give appellant a horizontal gaze nystagmus test, a standardized field sobriety test. However, appellant refused to perform the test. Deputy Begley then placed him under arrest and read him the DWI statutory warning requesting a blood specimen. After appellant's refusal, Deputy Begley retrieved a mandatory blood draw form authorizing him to retrieve appellant's blood for alcohol testing. A nurse at the hospital drew his blood and tested it with a blood draw kit. Deputy Begley then stayed with appellant until the deputy was relieved.

The blood test results showed that appellant's blood alcohol content was 0.19 grams of alcohol per one hundred millimeters of blood. The legal limit in Texas is .08 grams of alcohol per one hundred millimeters of blood. Dr. F. Guale, the Assistant Chief Toxicologist at the Harris County Institute of Forensic

5

Sciences, also tested appellant's blood. He testified that, based on appellant's age, weight, height and the time of the collision, appellant's blood alcohol was an estimated .21 grams of alcohol per one hundred millimeters of blood. He further testified that there was no way appellant's blood was below .08 grams at the time of the collision.

## MOTION TO SUPPRESS

In appellant's sole issue on appeal, appellant argues that the trial court committed reversible error when it denied his motion to suppress his statements made to the police when he was hospitalized. Appellant contends that the statements should have been suppressed because they were taken in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). Specifically, appellant contends that because he was immobilized at the hospital, the interrogation was custodial and he had not been properly advised of his rights before making the statements.

### *Standard of Review*

We review the trial court's ruling on a motion to suppress evidence for abuse of discretion, using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Id.* at 89.

6

We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

### *Custody*

Appellant contends that the trial court should have suppressed his statements to Deputy Begley at the hospital because they were taken in violation of his *Miranda* rights. The State responds that *Miranda* is not applicable because appellant was not in custody at the time he gave his statement. We agree with the State.

*Miranda* requirements apply to statements given when a suspect is in custody. *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612. A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury*

7

*v. California*, 511 U.S. 318, 322–25, 114 S. Ct. 1526, 1528–30 (1994)). The "reasonable person" standard presupposes an innocent person. *Dowthitt*, 931 S.W.2d at 254 (citing *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388 (1991)).

The determination of custody is entirely objective, and the subjective intent of law-enforcement officials is not relevant unless communicated through their words or actions to the suspect. *Dowthitt*, 931 S.W.2d at 254. The subjective belief of the suspect is also not relevant. *Id.* "Detention and questioning by a police officer during a DWI investigation, without more, is not custody." *Clark v. State*, 01-07-00993-CR, 2009 WL 566448 at *3 (Tex. App.—Houston [1st Dist.] Mar. 5, 2009, no pet.) (citing *State v. Stevenson*, 958 S.W.2d 824, 828–29 (Tex. Crim. App. 1997). Simply being the focus of a criminal investigation does not amount to being in custody. *Martinez v. State*, 131 S.W.3d 22, 32 (Tex. App.—San Antonio 2003, no pet.).

However, an interview that begins as noncustodial may escalate into a custodial interrogation because of police conduct during the encounter. *Dowthitt*, 931 S.W.2d at 255. In *Dowthitt*, the Court of Criminal Appeals outlined four situations in which custody might arise: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells a suspect that he cannot leave, (3) when law enforcement

officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest, and law enforcement officers do not tell the suspect that he is free to leave. *Id.*

Appellant likens this case to the third situation outlined in *Dowthitt,* arguing that because appellant was confined to a hospital bed, he could have reasonably believed that his freedom of movement was significantly restricted. Appellant argues that this establishes that he was in custody for purposes of *Miranda* and that his statements to the officer are inadmissible.

A statement made by a defendant to an officer while they are being treated at a hospital does not automatically become custodial interrogation. *See Guerrero v. State*, 605 S.W.2d 262, 265 (Tex. Crim. App. 1980) (holding that there was no custodial interrogation when an officer asks persons in an emergency room whether they were driving a car from an accident); *see also Newsome v. State*, 02-07-273-CR, 2008 WL 4938096 at *4 (Tex. App.—Fort Worth Nov. 20, 2008, pet. ref'd) (holding that defendant's statements were not a result of custodial interrogation when he was questioned at the hospital after a gun-shot wound); *Yarborough v. State*, 178 S.W.3d 895, 899–902 (Tex. App.—Texarkana 2005, pet. ref'd) (holding that defendant's statements were not made as a result of custodial interrogation when his movements were restrained only to the extent that he

received medical treatment for his stab wounds); *Redmond v. State*, 30 S.W.3d 692, 696–97 (Tex. App.—Beaumont 2000, pet. ref'd) (holding that there was no custodial interrogation when officer asked defendant, who was neither in custody nor under arrest at the time, but who was in an ambulance with two broken legs, strapped into a gurney, what had happened); *Vessels v. State*, 938 S.W.2d 485, 486, 488 (Tex. App.—El Paso 1996, no pet.) (holding that defendant's statements were not the result of custodial interrogation when he went to a hospital for treatment of a gun-shot wound to his hand).

Appellant's argument relies on *Gattis v. State* and *Bell v. State* to argue that he was in custody because he reasonably believed that his freedom of movement was restrained by his hospital treatment. 14-03-00045-CR, 2004 WL 2358455 at *3 (Tex. App.—Houston [14th Dist.] Oct. 21, 2004, no pet.); 881 S.W.2d 794, 799 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). However, those cases do not apply here. In *Gattis*, the court held that arrest was complete when the officer told appellant that he was under arrest while he was restrained to the hospital bed with his head immobilized. *Gattis*, 2004 WL 2358455 at *3. The court reasoned that although the restraint was imposed by the hospital for the purposes of treating appellant, he could have reasonably believed that he was under restraint when he was confined to the bed and was told he was under arrest. *Id.* Similarly, in *Bell*, the court held that appellant was under arrest because a "reasonable person, injured

and lying on a hospital stretcher, hearing from a police officer the words 'you are under arrest' and 'placed under arrest,' could conclude that he was not free to leave." *Bell*, 881 S.W.2d at 799. In both cases, the court determined that the appellant was under arrest because a person confined to a hospital bed, combined with a statement from an officer that they were under arrest, could reasonably believe that they were under arrest and not free to leave for the purposes of *Miranda*. In this case, appellant was confined to a hospital bed, but the officer did not tell him that he was under arrest until after he refused to take an alcohol blood test. Therefore, appellant was not in custody when he gave earlier statements to the officer.

We overrule appellant's sole issue.

## CONCLUSION

We affirm the judgment of the trial court.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).

11